NO. 07-02-0453-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 31, 2003
_____

JAI B. STRAUSS,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 6121; HON. LEE WATERS, PRESIDING
_____

*Opinion*
_____

Before QUINN, REAVIS, and CAMPBELL, JJ.

Jai B. Strauss appeals his conviction for possessing marijuana. Through four issues he contends that the trial court erred in denying his motions to suppress evidence and to dismiss the cause. He believed the evidence was subject to suppression and the cause subject to dismissal because his detention and the ensuing search of his van were illegal. We affirm the judgment.

## *Background*

In pertinent part, the record illustrates that appellant and a passenger were stopped on I-40 outside McLean, Texas, for speeding. The two were in a Chevrolet van with Ohio plates, which van appellant drove at the time. The officer who made the stop asked for appellant's identification and about the identity of the individual who owned the van. The latter did not belong to appellant, and though appellant said the owner was a friend, he could not recall his name. Furthermore, appellant and his passenger gave the officer conflicting stories about the location at which they previously stayed. This caused the officer to ask if appellant possessed drugs and to request permission to search the van. Appellant consented to the request.

As he searched the vehicle, the officer discovered a shaving bag, opened it, and smelled burnt marijuana. Thereafter, appellant informed the officer that he (appellant) had smoked some marijuana earlier. The officer continued his search and noticed laundry detergent scattered about the rear floor of the van. Laundry detergent was commonly used to mask the odor of drugs, according to the officer. Further investigation revealed a compartment in the rear of the vehicle wherein tools were commonly stored. Upon opening it, the officer smelled the scent of fresh marijuana. At that point he decided to call for a drug dog to sniff the vehicle to confirm his suspicion that marijuana was present and determine its location. The dog was in the possession of authorities in Shamrock, a neighboring town, and was not immediately available. Nonetheless, arrangements were made for the dog and the officer to meet in the town of McLean. Apparently, the officer

2

thought it safer to continue the search at a location off the highway. So, he asked appellant to drive the van to a service station in town. Appellant agreed to do so.

After the group arrived at the service station, the officer informed appellant and his passenger that they were not under arrest and were free to leave. However, they were denied the opportunity to drive away in the van. The officer opted to retain control over the vehicle until his investigation was completed. Shortly thereafter, appellant and his passenger asked for permission to go to a nearby convenience store to obtain cigarettes. The officer acquiesced. The two left afoot but did not return.

The drug dog arrived about an hour and fifteen minutes after appellant's initial stop on the highway. It sniffed the vehicle and indicated that drugs were present in the vicinity of the van wherein the officer smelled raw marijuana. Ultimately, 60 pounds of the substance was discovered in the van, and appellant was arrested after being found running down the highway some eight hours later.

### Issue Two – Consent to Search

We initially address appellant's second issue, the matter of his consent to search the van. He alleges that the State failed to prove it was voluntarily given. We overrule the point for it was waived.

Via his written motion to suppress, appellant questioned the validity of his consent. That is, he alleged that the officers entered upon and searched "premises" and seized materials "without lawful consent or lawful authority and without a search warrant." Yet, the validity of his consent was not mentioned by appellant orally at hearing upon his motions. Nor did he orally mention it after the hearing when the trial judge returned to the

3

courtroom to clarify the issues the parties wanted him to consider. At that time, appellant informed the trial court that he believed the case "turns on whether or not you can seize a vehicle without seizing people." His silence about the question of consent may stem from comments made to the trial court via the "Trial Brief in Support of Motion to Dismiss" that he previously tendered to the court. Therein, appellant expressly represented that while he thought it "doubtful that the consent to search . . . was voluntary," the "issue does not have to be decided" since the prior arrest was unlawful.

It is clear that to preserve error one must contemporaneously inform the trial court not only of the objectionable matter but also of the specific grounds underlying the objection. *Cisneros v. State*, 692 S.W.2d 78, 83 (Tex. Crim. App. 1985); *Villareal v. State*, 811 S.W.2d 212, 217 (Tex. App.–Houston [14th Dist.] 1991, no pet.). Similarly clear is that an objection can be waived. For instance, if one moves to suppress evidence and the motion is denied, uttering the phrase "no objection" when the evidence is tendered at trial results in the loss of appellant's complaint *viz* the motion to suppress. *Moraguez v. State*, 701 S.W.2d 902, 904 (Tex. Crim. App. 1986) (en banc).

Here, while appellant may have mentioned the validity of his consent in his motion to suppress, he said nothing about it during his argument at the subsequent hearing. Nor did he broach the topic when the trial court inquired about the pivotal issues in the dispute. By that time, he had already told the judge in writing that the issue of consent did not have to be decided.

We are troubled with the prospect that an appellant can urge an objection on particular grounds in a written motion, later inform the trial court to disregard one or more

4

of those grounds, and then contend, on appeal, that one of those very grounds which the trial court was directed to ignore actually warrants reversal of the judgment. *See Prystash v. State*, 3 S.W.3d 522, 531-32 (Tex. Crim. App. 1999) (stating that under the doctrine of invited error, one is estopped from complaining about that which he induced). Under those circumstances, the appellant hardly complies with the spirit of Texas Rule of Appellate Procedure 33.1.[1] Indicating that one ground for objection need not be addressed falls short of informing the trial court, with sufficient specificity, of all the grounds upon which the appellant relies in asserting his complaint. And, because it does, we conclude that an appellant cannot assert, on appeal, the ground that he told the court need not be decided. So, having told the trial court that it need not address consent, the appellant at bar cannot raise that issue on appeal as grounds for reversal.

### Issues One, Three and Four

Through his remaining three issues, appellant asserts that the officer had no legitimate basis to detain and search the van after being stopped for speeding. We overrule these points as well.

It is clear that an officer who witnesses a traffic violation has sufficient authority to stop the vehicle. *Nuttall v. State*, 87 S.W.3d 219, 222 (Tex. App.--Amarillo 2002, no pet.); *Josey v. State*, 981 S.W.2d 831, 837 (Tex. App.–Houston [14th Dist.] 1998, pet. ref'd). Admittedly, during that stop both the vehicle and its occupants are considered seized. *Spright v. State*, 76 S.W.3d 761, 766 (Tex. App.--Houston [1st Dist.] 2002, no pet.) (stating

---

[1]Rule 33.1 obligates one to inform the trial court of the grounds underlying a complaint "with sufficient specificity to make the trial court aware of the complaint . . . ." TEX. R. APP. P. 33.1(a)(1)(A).

that a routine traffic stop is a detention). And, while the seizure may last no longer than necessary to effectuate the purpose of the initial stop, *Davis v. State*, 947 S.W.2d 240, 244-45 (Tex. Crim. App. 1997), the officer is nonetheless entitled to conduct a brief and minimally intrusive investigation. For instance, he may require the detainee to identify himself and produce a valid driver's license and proof of insurance. *Spright v. State*, 76 S.W.3d at 766. So too may the officer check for outstanding warrants, *Davis v. State*, 947 S.W.2d at 245 n.6, ask about the driver's destination and purpose for the trip, *Nuttall v. State*, 87 S.W.3d at 222; *Estrada v. State*, 30 S.W.3d 599, 603 (Tex. App.--Austin 2000, pet. ref'd.), and direct the driver to step out from the vehicle. *Estrada v. State*, 30 S.W.3d at 603.[2] Indeed, when justified by safety and security concerns, the officer may also require the detainee to move from one location to another during the investigatory stop. *Josey v. State*, 981 S.W.2d at 841. And, most importantly, once the purpose of the stop has been effectuated and the officer's suspicions allayed, he may still ask the driver if he possesses any illegal contraband and then solicit his voluntary consent to search the vehicle. *Spright v. State*, 76 S.W.3d at 767-68.[3] If consent is withheld, then further detention of either the individual or chattel becomes improper.

---

[2]Given *Estrada* and *Nuttall*, appellant is mistaken when he posits that he was "under *arrest*" simply because the officer asked him to exit the vehicle and would not allow him to leave. (Emphasis added). Again, those are things that can occur during a temporary investigative detention. Nor does the fact that an officer may also pat down the suspect for weapons evince that the suspect has been arrested. That too is something that may be done during an investigatory detention. *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000).

[3]Given *Spright*, appellant also is mistaken when he argues that an officer can neither ask if the detainee possesses contraband nor solicit consent to search his vehicle once the purposes of the initial detention have been completed.

6

Here, the record depicts that the officer stopped appellant for speeding and asked him to identify himself. While that was occurring, appellant was also asked about the ownership of the van and the destination from whence he came. The same was asked of the passenger. The two individuals gave conflicting responses. *See Estrada v. State*, 30 S.W.3d at 603 (considering the utterance of contradictory stories by occupants of a vehicle as articulable facts which a court can consider in determining the existence of reasonable suspicion). Furthermore, appellant informed the officer that though the owner of the van (which vehicle was registered in Ohio) was a friend, he did not recall his name.[4] Thereafter, the officer asked if appellant was carrying drugs and obtained consent to search the van.[5] While conducting that search, he saw a large quantity of detergent scattered about, recalled that detergent is used as a masking agent to cover the odor of drugs, *see Estrada v. State, supra* (recognizing the presence of odor-masking agents as another articulable fact suggestive of criminality), smelled the odor of burnt marijuana, was told by appellant that he had smoked marijuana earlier, and smelled the odor of raw marijuana after opening a compartment of the vehicle. These circumstances, at the very least, constitute articulable facts from which a reasonable officer can reasonably infer that appellant may be transporting contraband. So, they justified further investigation.

Due to his concern about unduly de-constructing the vehicle to confirm or negate his suspicions, the officer then decided to secure the use of a drug dog. *See Davis v.*

---

[4]It is not unreasonable to construe that response as suspicious. Indeed, common sense suggests that a detainee would normally know the name of a "friend" who authorized the detainee to drive the vehicle across the United States.

[5]As previously discussed, appellant failed to preserve any complaint he had about the validity of the consent.

*State*, 947 S.W.2d at 245 (requiring that the investigative methods employed be the least intrusive means reasonably available to verify or dispel the suspicion). Such a method of investigation has been deemed to be minimally intrusive. *Josey v. State*, 981 S.W.2d at 841. Additionally, the idea of conducting a further search on an interstate also raised some safety concerns for the officer. So, he asked appellant to drive the van into town, and appellant agreed. To reiterate, safety and security reasons may justify moving a suspect from one location to another.

Eventually, the drug dog arrived and indicated that drugs were present in the vehicle. Upon the dog so indicating, the officer's reasonable suspicion ripened into probable cause not only to seize the vehicle but also arrest its driver. *Glenn v. State*, 967 S.W.2d 467, 472 (Tex. App.--Amarillo 1998, pet. dism'd). That approximately 75 minutes lapsed between the time the officer first stopped appellant and the dog arrived did not *per se* render the detention unreasonable. *See id*. (holding that a 90-minute delay was not per se unreasonable); *accord, Josey v. State*, *supra* (holding that the detention was not unreasonable even though the officers had to wait 90 minutes for the drug dog to arrive). The record illustrates that the animal had to be secured from a law enforcement agency in a neighboring community. Furthermore, it was not immediately available. And, while I-40 may be considered to be a thoroughfare over which drugs are often transported, the record does not suggest that the officer 1) knew appellant would be traveling through the area or 2) suspected him of carrying contraband prior to the time of the initial stop. *See United States v. Place,* 462 U.S. 696, 710, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (wherein the Supreme Court found the investigatory detention unreasonable because, among other

8

things, the investigators previously knew of the time the suspect was to appear and could have arranged to have the dog present at that time).

Finally, that the officer detained the van while informing appellant and his passenger that they were free to leave is of no import. Officers have the authority to temporarily detain for investigatory purposes either people or personalty. *Davis v. State*, 947 S.W.2d at 243-44. So, as long as reasonable suspicion exists indicating that the chattel is linked to criminal activity, the officer is free to detain only the chattel.[6]

In sum, and after reviewing the totality of the circumstances, we cannot say that the trial court abused its discretion in concluding that the initial stop, subsequent search of the vehicle, and ultimate arrest of appellant were lawful. Accordingly, we affirm its judgment.


Brian Quinn
Justice


Publish.

---

[6]We do admit, though, that when the personalty is a car, detention of the vehicle may effectively restrain the liberty of the driver as well. *Davis v. State,* 947 S.W.2d 240, 243 (Tex. Crim. App. 1997).