NO. 07-04-0561-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



SEPTEMBER 14, 2005


______________________________



ROEL ROBLEDO, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 287TH DISTRICT COURT OF PARMER COUNTY;



NO. 2652; HON. GORDON H. GREEN, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Appellant, Roel Robledo, appeals his conviction for possessing a controlled
substance. His sole issue concerns the trial court's order denying his motion to suppress. 
Suppression was warranted, in his view, because the methamphetamine was seized from
the cab of his tractor trailer in violation of both the federal and state constitutions. (1) That is,
appellant believes the officer impermissibly detained him after the purpose of the initial stop
was effectuated and that his consent to search was involuntary. We affirm the judgment
of the trial court. 

 Standard of Review 

 We review the trial court's ruling on a motion to suppress under the standard
announced in Johnson v. State, 68 S.W.3d 644 (Tex. Crim. App. 2002) and Guzman v.
State, 955 S.W.2d 85 (Tex. Crim. App. 1997). It requires us to give almost total deference
to the trial court's findings of historical fact and review de novo the application of the law
to the facts. Johnson v. State, 68 S.W.3d at 652-53. 

 Application of Standard

 The only witness at the suppression hearing was Trooper Joel Rejino. He testified
that around midnight he observed the tractor trailer that appellant drove pass him in the
opposite direction. Peering through his rearview mirror, he noticed that the vehicle's tail
lights were not illuminated. This caused the officer to turn his car around and follow the
tractor trailer. While doing so, he realized that the tail lights actually were illuminated but
would flicker on and off. 

 Appellant was eventually stopped and asked for his driver's license and paperwork. 
So too did the trooper request appellant to accompany him to the patrol car. Both entered
the vehicle. Rejino sat in the driver's seat while appellant sat in the passenger seat. There,
the trooper examined the registration and insurance documents of the tractor trailer and
decided to give appellant a warning ticket. After issuing the written warning, Rejino
received a criminal history report from dispatch showing that appellant had no outstanding
warrants but was the subject of a prior drug conviction. (2) Within 10 to 30 seconds of issuing
the citation and receiving the report, the trooper requested of appellant permission to
search both his person and the tractor trailer. Appellant consented to both. It was during
the search of the vehicle that the controlled substance was discovered. 

 Authority holds that as part of a traffic stop, an officer may 1) require the detainee
to identify himself and produce a valid driver's license and proof of insurance and 2) detain
the individual for a period of time reasonably sufficient to check for outstanding warrants. 
Kothe v. State, 152 S.W.3d 54, 63-64 (Tex. Crim. App. 2004); Strauss v. State, 121 S.W.3d
486, 491 (Tex. App.-Amarillo 2003, pet. ref'd). So too may he also ask the driver if he
possesses illegal contraband and solicit voluntary consent to search the vehicle once the
purpose of a traffic stop has been effectuated. Strauss v. State, 121 S.W.3d at 491; James
v. State, 102 S.W.3d 162, 172-73 (Tex. App.-Fort Worth 2003, pet. ref'd). Requesting
such consent is not an unlawful seizure, and neither probable cause nor reasonable
suspicion is required for the officer to ask. James v. State, 102 S.W.3d at 173. Nor must
the officer tell the individual that he is free to leave after the purpose of the stop is
completed. Vargas v. State, 18 S.W.3d 247, 252 n.1 (Tex. App.-Waco 2000, pet. ref'd). 


 As previously mentioned, once Trooper Rejino issued the warning and received the
report from the dispatcher, he solicited the consent to search. By then the purpose of the
stop had been effectuated; yet, only seconds had passed between the time consent was
requested and the purpose effectuated. This is not a situation wherein appellant was
detained for minutes or hours prior to broaching the matter of consent. In other words, the
effectuation of the stop and the request for consent were rather contemporaneous here. 
Thus, we view the situation as falling within the scope of James and Strauss and,
consequently, lawful. 

 As to the contention that his consent was involuntary, we note that to be of such ilk,
it must be the product of duress or coercion, express or implied. Reasor v. State, 12
S.W.3d 813, 817 (Tex. Crim. App. 2000). Moreover, the evidence of record here does not
lend itself to such a claim. First, the initial detention was quite lawful; so, it cannot be said
that appellant's acquiescence was part and parcel of illegal conduct on the part of the
trooper. Second, no evidence was presented at the suppression hearing that illustrated the
officer told appellant he had to consent or that if he did not consent he would be arrested
or otherwise detained. Nor is there evidence that the trooper implicitly or explicitly
threatened appellant verbally or through gesture. Indeed, but for conduct on the part of
appellant indicative of nervousness, the interaction between the two appeared routine for
a traffic stop. Finally, that the officer failed to inform appellant that he could exit the patrol
car and leave is alone insufficient criteria to illustrate coercion; again, an officer does not
have to tell the individual he may leave once the purpose of the stop is completed. Vargas
v. State, 18 S.W.3d at 252 n.1.

 In sum, the trial court did not abuse its discretion in overruling the motion to
suppress. Accordingly, we overrule each of appellant's issues and affirm the judgment of
the trial court.

 Brian Quinn 

 Chief Justice 

Publish.
1. Appellant does not separately brief his federal and state constitutional claims, and we will therefore
not separately address them. 
2. At another point, Rejino testified that he received the criminal history report prior to issuing the
warning. It was up to the trial court to resolve this inconsistency.