NO.
12-07-00031-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

JAMES
EARL INGRAM,     §                      APPEAL FROM THE 7TH

APPELLANT

 

V.        §                      JUDICIAL  DISTRICT COURT

 

THE STATE OF TEXAS,

APPELLEE   §                      SMITH COUNTY, TEXAS

                                                                                                                                                      


            MEMORANDUM OPINION

            James
Earl Ingram appeals his conviction for possession of cocaine in an amount of
four grams or more but less than 200 grams, a second degree felony.[1]  In his sole issue on appeal, Appellant
contends that the trial court erred in denying his motion to suppress physical
evidence.  We affirm.

 

Background








            On May 23, 2005, Frank Bonilla, a
trooper with the Texas Department of Public Safety, testified that he was
patrolling Interstate 20 in Smith County, Texas when his radar indicated a
speeding vehicle.  Bonilla stopped the
vehicle, which was driven by Oliver Williams. 
Williams’s nephew, Appellant, was the passenger and owner of the
vehicle.  During questioning, Bonilla
stated that the two men gave slightly different stories regarding where they
had been.  At first, Williams said they
were visiting someone ill in Dallas and then stated they were visiting a cousin
in Dallas.  Appellant told Bonilla that
he was visiting “some folks” in Dallas and that they had taken a car to
Dallas.  Both stated that they were
returning to Longview.  According to
Bonilla, the two men were  “extremely,
visibly” nervous.  At that point, Bonilla
suspected criminal activity.  When
Bonilla was returning to his patrol car, Williams stopped him and said, “There
ain’t any of that hanky-panky stuff going on around here.”  That spontaneous comment further raised
Bonilla’s suspicions that something was amiss. 
During the stop, Bonilla requested and received Appellant’s criminal
history and discovered it contained numerous charges, from “assault to many
different types of drug charges.”

            Bonilla noted that Appellant, while
still in the passenger seat, was moving around a lot and  occasionally disappeared from Bonilla’s
sight.  Bonilla was concerned because
Appellant could have been reaching down for a weapon.  Bonilla issued Williams a warning ticket and
then searched Appellant for obvious weapons. 
While searching Appellant, Bonilla felt a bulge in his pocket and
Appellant removed from his pocket what turned out to be a bundle of money.  Bonilla testified that the bundle of money
further raised his suspicions of possible narcotics activity because the money
was  “a bunch of fives wrapped around
with rubber bands, and they were all broken down” in a manner he described as a
“drug stop.”  To Bonilla, this indicated
the money could be drug money.  Bonilla
further explained that the style in which the money was wrapped seemed
consistent with a purchase of narcotics.

            Bonilla requested  and received permission from Appellant to
search the vehicle.  During the search,
Bonilla noted that the spare tire was missing. 
Based on his training and experience, he stated that narcotics and drugs
were sometimes concealed in the spare tire compartment.  Further, Bonilla was suspicious because it
would be unusual to travel to Dallas and back without a spare tire.  Bonilla also noticed an unusual rattle in the
rear driver’s side door.  He knew, based
on his training and experience, that drug traffickers occasionally hide
contraband inside a car’s doors.  Bonilla
concluded he had reasonable suspicion to believe that there was contraband in
the vehicle.  Rather than dismantle the
vehicle’s door, Bonilla requested a canine unit to determine if there was
contraband in the door.  Bonilla advised
Appellant and Williams that it would take ten to fifteen minutes for the canine
unit to arrive.  Appellant agreed to wait
and did not object.  

            Bonilla testified that, in the
meantime, Appellant could not remain still. 
He leaned on Bonilla’s patrol car, got off the patrol car, and then
leaned back on the car, continuously moving around.  Bonilla noticed that Appellant’s left shoe
was partially off.  Suspecting there
could be contraband, either a weapon or drugs, he asked to see Appellant’s
shoe.  Appellant took off his right shoe,
but Bonilla told him he wanted to see the other shoe.  Appellant took off his left shoe and then
hesitated.  Bonilla grabbed the shoe and
the two men “tussle[d].”  Appellant threw
the shoe toward Williams.  Bonilla
attempted to handcuff Appellant, but Appellant refused until Bonilla and the
other trooper drew their weapons and instructed him to get on the ground.  At that point, Appellant cooperated and was
handcuffed.  Then, Bonilla retrieved
Appellant’s shoe and found a large bag containing cocaine, as well as a smaller
bag that also contained cocaine.  Bonilla
arrested Appellant and Williams for possession of a controlled substance.  While Bonilla was completing the paperwork at
the jail, Appellant advised Bonilla that the drugs were his and asked him to
release his uncle.

            At the conclusion of the evidence,
and after argument of counsel, the trial court found that Bonilla had probable
cause to stop the vehicle, probable cause to conduct the investigation, and
probable cause to detain the two men while waiting for the canine unit.  The trial court also found that Bonilla,
because of his safety concerns, had probable cause to ask Appellant what was in
his shoe.  Thus, the trial court denied
Appellant’s motion to suppress the physical evidence, i.e., the cocaine, found
in Appellant’s shoe.  Further, the trial
court found Appellant guilty of possession of a controlled substance as alleged
in the indictment.  After a sentencing
hearing, the trial court assessed Appellant’s punishment at fifteen years of
imprisonment.[2]  This appeal
followed.

 

Motion to Suppress

            In his sole issue on appeal,
Appellant argues that the trial court erred in denying his motion to suppress
the physical evidence seized during the traffic stop.  Specifically, Appellant urges a two pronged
attack on the trial court’s denial of his motion: that the seizure was
unconstitutional as  the result of an
unreasonably prolonged detention, and that the seizure lacked probable cause.

Standard
of Review

            A trial court’s decision to admit or
exclude evidence is reviewed for abuse of discretion.  See Osbourn v. State, 92 S.W.3d
531, 537 (Tex. Crim. App. 2002).  A trial
court abuses its discretion when it acts outside the zone of reasonable
disagreement.  Burden v. State,
55 S.W.3d 608, 615 (Tex. Crim. App. 2001). 
A reviewing court is to uphold a trial court’s ruling regarding the
admission or exclusion of evidence if the ruling is reasonably supported by the
record and is correct under any theory of law applicable to the case.  Carrasco v. State, 154 S.W.3d 127, 129
(Tex. Crim. App. 2005).  

Applicable
Law

            The Fourth Amendment to the United
States Constitution provides that “[t]he right of the people to be secure in
their persons, houses, papers, and effects, against unreasonable searches and
seizures, shall not be violated, and no Warrants shall issue, but upon probable
cause, supported by Oath or affirmation, and particularly describing the place
to be searched, and the persons or things to be seized.”  U.S.
Const. amend. IV.  Similarly,
Article I, section 9 of the Texas Constitution states, “The people shall be
secure in their persons, houses, papers and possessions, from all unreasonable
seizures or searches, and no warrant to search any place, or to seize any
person or thing, shall issue without describing them as near as may be, nor
without probable cause, supported by oath or affirmation.”  Tex.
Const. art. I, § 9.  

            We review the issue of
whether a specific search or seizure is “reasonable” under the Fourth Amendment
de novo.  Kothe v. State,
152 S.W.3d 54, 62 (Tex. Crim. App. 2004). 
Reasonableness is ultimately a question of substantive Fourth Amendment
law.  Id.  We 
give great deference to the trial court’s findings of historical fact,
but questions involving legal principles and the application of law to
established facts are properly reviewed de novo.  Id. at 62-63.  Thus, we view the trial court’s factual
findings in the light most favorable to its ruling, but decide the issue of
reasonableness as a question of Fourth Amendment law under Supreme Court
precedent.  Id. at 63.
Reasonableness is measured “in objective terms by examining the totality of the
circumstances” and “emphasizing the fact-specific nature of the . . . inquiry.”
Id. (quoting Ohio v. Robinette, 519 U.S. 33, 39,
117 S. Ct. 417, 136 L. Ed. 2d 347 (1996)). 
We must balance the public interest served with the individual’s right
to be free from arbitrary detentions and intrusions.  Id.

            The Fourth Amendment protects people
and their freedom from police intrusion “wherever an individual may harbor a
reasonable ‘expectation of privacy.’”  Terry v. Ohio, 392 U.S. 1, 9, 88 S.
Ct. 1868, 1873, 20 L. Ed. 2d 889 (1968) (quoting Katz v. United States,
389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed. 2d 576 (1967)).  The stopping of a vehicle and detention of
its occupants constitutes a “seizure” under the Fourth Amendment.  United States v. Brigham, 382
F.3d 500, 506 (5th Cir. 2004).  We
evaluate the reasonableness of an investigatory stop by making a dual inquiry, asking
“whether the officer’s action was justified at its inception, and whether it
was reasonably related in scope to the circumstances which justified the
interference in the first place.”  United
States v. Sharpe, 470 U.S. 675, 682, 105 S. Ct. 1568, 1573, 84 L. Ed.
2d 605 (1985).

            Although a “seizure” may last no
longer than necessary to effectuate the purpose of the initial stop, courts
have imposed no rigid time limitations on investigatory stops.  Sharpe, 470 U.S. at 685, 105 S.
Ct. at 1575; Strauss v. State, 121 S.W.3d 486, 491 (Tex. App.–Austin
2003, pet. ref’d).  In assessing whether
a detention is too long in duration to be justified as an investigative stop,
we must examine whether the police diligently pursued a means of investigation
that was likely to confirm or dispel their suspicions quickly, during which
time it was necessary to detain the defendant. Sharpe, 470 U.S.
at 686, 105 S. Ct. at 1575.  During an
investigative stop, the police officer is entitled to conduct a brief and
minimally intrusive investigation.  Strauss,
121 S.W.3d at 491.  The officer may
require the detainee to identify himself and produce a valid driver’s license,
check for outstanding warrants, ask about the driver’s and passenger’s
destination and purpose for the trip, direct the driver to step out from the
vehicle, require the detainee to move from one location to another, ask the
detainee if he possesses any illegal contraband, and solicit his voluntary
consent to search the vehicle.  Id.


Analysis








            In this case, Bonilla stopped
Williams for speeding.  According to
Bonilla, Williams and Appellant gave conflicting stories about their trip, and
seemed “extremely, visibly” nervous. 
After Williams told Bonilla that “[t]here ain’t any of that hanky-panky
stuff going on around here,” Bonilla grew increasingly suspicious.  Further, Appellant’s criminal history
comprised numerous charges, including narcotics charges.  Bonilla requested and received permission to
search the vehicle, and noticed both the absence of a spare tire and an unusual
rattle in one of the vehicle’s doors. 
Bonilla told Appellant that he wanted to bring a canine unit to search
the vehicle and stated that it would take ten to fifteen minutes.  Appellant agreed to wait.  While waiting for the canine unit, Bonilla
noticed that Appellant was continuously moving and that his left shoe was
partially off.  He asked to see Appellant’s
shoe.  When Appellant removed his shoe,
he hesitated and struggled with Bonilla for possession of the shoe.  Finally, Appellant threw the shoe toward
Williams.  When Bonilla retrieved the
shoe, he discovered two bags of cocaine. 

            Approximately twenty-five to
twenty-six minutes elapsed before Bonilla requested a canine unit.  Other courts have found similar intervals
after the initial stop to be reasonable under the Fourth Amendment.  In Brigham, a police officer
stopped a vehicle for following too closely. 
Brigham, 382 F.3d at 504. 
During the stop, the officer became suspicious because none of the
occupants of the vehicle possessed the same characteristics, i.e., age and
surname, as the person listed as the lessee of the vehicle, one occupant’s
identification appeared to be fictitious, the occupants appeared to be nervous
and avoided eye contact, and the occupants’ explanations of their travel plans
were inconsistent.  Id. at
504-05.  After giving the defendant a
warning ticket, the officer received permission to search the vehicle.  Id. at 505.  Approximately twenty-nine minutes after the
initial stop, the officer discovered a container of liquid codeine.  Id. The court determined that
the officer’s actions were not unreasonable under the circumstances, and that
the detention of the defendant and his companions did not violate the Fourth
Amendment.  Id. at 512.

            In another case, the
police officer stopped the defendant after receiving a radio dispatch regarding
a possible intoxicated driver.  Kothe,
152 S.W.3d at 54.  During the stop, the
officer conducted a field sobriety test and a driver’s license and warrant
check. Id.  Although the
officer concluded that the defendant was not intoxicated, he received another
radio dispatch describing the defendant as possibly possessing stolen
coins.  Id.  The officer received the defendant’s
permission to search his vehicle and discovered drug paraphernalia, but no
coins.  Id. However, the
defendant’s passenger informed the officer that she had two “baggies” of heroin
that the defendant had asked her to hold. 
Id.  The court
stated that there was no evidence that the officer failed to diligently pursue
his investigation, that the license check was a pretext, or that he engaged in
a “fishing expedition.”  Id.
at 66.  Moreover, the court determined
that the officer’s decision to return to his patrol car and wait a few minutes
for the warrant check results before releasing the defendant was “reasonable”
as a matter of substantive Fourth Amendment law.  Id.

            In Strauss, the police
officer stopped the defendant for speeding. 
Straus, 121 S.W.3d at 489. 
The defendant stated that the vehicle belonged to a friend, but could
not recall his name.  Id.  Both the defendant and his passenger gave
conflicting stories about the location at which they previously stayed.  Id.  The officer received the defendant’s
permission to search the vehicle and discovered a shaving bag that smelled of
burnt marijuana along with laundry detergent scattered on the rear floor of the
vehicle.  Id.  He also smelled fresh marijuana in the rear
of the vehicle in a compartment containing tools.  Id.  At that point, the officer requested a canine
unit, but one was not immediately available.  Id. 
Approximately one hour and fifteen minutes after the initial stop, the
canine unit arrived and discovered sixty pounds of marijuana in the vehicle.  Id. 
The court stated that the length of time between the initial stop and
the arrival of the canine unit did not render the detention per se unreasonable
because the unit was not immediately available and had to be secured from a law
enforcement agency in a neighboring community. 
Id. at 492.  After
reviewing the totality of the circumstances, the court concluded that the trial
court did not abuse its discretion in determining that the initial stop,
subsequent search, and arrest of the defendant were lawful.  Id.

            Finally, in a fourth case, the
police officers stopped the driver of a vehicle after seeing him commit a
traffic offense.  Josey v. State,
981 S.W.2d 831, 835 (Tex. App.–Houston [14th Dist.] 1998, pet. ref’d).  The defendant was a passenger in the
vehicle.  Id.  Because the driver was arrested and the
defendant did not have his driver’s license with him, the officers impounded
the vehicle.  Id.  However, before the wrecker took the vehicle,
the officers conducted a search of the vehicle, which revealed a bag of cash in
bundles of $1,000 and a title naming the defendant as the owner of the vehicle.  Id.  At that point, the officers transported the
defendant and the vehicle to a police station and requested a canine unit to
search the vehicle.  Id.  During that search, the officers and the
canine unit discovered a loaded pistol and a small amount of cocaine and
marijuana.  Id.  However, ninety minutes had elapsed between
the initial stop and the full search of the vehicle at the police station. Id.
at 841.  The court noted that during this
time, the officers secured the scene, arrested the driver, asked the defendant
for identification, ran a computer check on the defendant, and began an
inventory search of the vehicle pursuant to impoundment procedures.  Id.  The court also noted that some of the delay
was attributable to the defendant’s silence. 
Id.  Finally, the
court concluded that the defendant’s detention was reasonable under the
circumstances.  Id.

            In this case, the twenty-five to
twenty-six minutes that elapsed between the initial stop and  request for the canine unit was about the
same as the interval in Brigham, more than the interval at
question in Kothe, but far less than the seventy-five minute
interval in Strauss, or the ninety minute interval in Josey.  There is no evidence that Bonilla failed to
diligently pursue his investigation in requesting and waiting for a canine
unit.  See Kothe, 152
S.W.3d at 66.  Further, Appellant’s
furtive movements involving his shoe while waiting for the canine unit, along
with the previously noted suspicious behavior and activity, properly raised
Bonilla’s suspicions of illegal contraband. 
Thus, we conclude that seizure of Appellant’s shoe was reasonable under
the circumstances.  See id.
at 63. Based on the totality of the circumstances, the trial court did not
abuse its discretion in denying Appellant’s motion to suppress physical
evidence.  Accordingly, we overrule
Appellant’s sole issue.

 

Disposition

            Having overruled Appellant’s sole
issue, we affirm the judgment of the trial court.

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

Opinion delivered February 29,
2008.

Panel
consisted of Worthen, C.J., Griffith, J, and Hoyle, J..

 

 

 

 

 

 

(DO
NOT PUBLISH)











[1] See Tex. Health & Safety Code Ann. § 481.115(a), (d) (Vernon 2003).





[2] An individual adjudged guilty of a second degree felony shall be
punished by imprisonment for any term of not more than twenty years or less
than two years and, in addition, a fine not to exceed $10,000.  See Tex.
Penal Code Ann. § 12.33 (Vernon 2003).