NO







NO. 07-09-0105-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 20, 2010

______________________________


LUIS ALBERTO JARAMILLO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 57,842-D; HONORABLE DON EMERSON, JUDGE

_______________________________

Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Following a plea of not guilty, Appellant, Luis Alberto Jaramillo, was convicted of
possession of one gram or less of methamphetamine,


 enhanced, and sentenced to
seven years confinement. Presenting a sole issue, Appellant maintains the stop of his
vehicle was unreasonable. We affirm.
Factual Background
Â Â Â Â Â Â Â Â Â Â On May 5, 2008, law enforcement had been attempting to serve a grand jury
subpoena on an Asian female named Cindy Sivilaisane. Although not personally
familiar with Ms. Sivilaisane, Officer Robert Woodward, who had been conducting
surveillance on her residence, observed an Asian female depart that residence and
enter a vehicle with two male occupants. Woodward testified that although he did not
observe the driver of the vehicle commit any traffic offenses or engage in any other
criminal activity, he nevertheless stopped the vehicle and asked for permission to
search the vehicle. After consent to search the vehicle was given by the driver, but
before the search occurred, Officer Ross Renner arrived as backup. Renner testified
that he determined the Asian female was not the person he and Woodward had been
attempting to locate to serve the subpoena. Despite Officer Rennerâs knowledge, all
three occupants were asked to exit the vehicle and the search continued. 
Â Â Â Â Â Â Â Â Â Â According to the evidence, during the search of the vehicle, a syringe was found
on the floorboard of the right passenger seat where Appellant had been seated. The
officers also found two different CD cases. One case, discovered underneath the front
seat, contained a plastic baggie with marihuana and a baggie with methamphetamine. 
A second case, which was found behind the front seat, contained two digital scales and
several spoons.Â 
Â Â Â Â Â Â Â Â Â Â Originally, the Asian female had given officers a false name on account of an
outstanding warrant. After almost one hour, the officers were able to determine her true
identity. They spoke with her and the driver of the vehicle. At that point, she became
cooperative and told Officer Renner âoff the recordâ that the contraband found in the
vehicle belonged to Appellant. Despite Appellantâs denial of knowledge of the
contraband found in the vehicle, he was handcuffed and arrested. Appellant was
searched at the jail by Officer Johnny Bermea, who found .13 grams of
methamphetamine in the change pocket of Appellantâs jeans. Â 
Â Â Â Â Â Â Â Â Â Â By a sole issue, Appellant maintains the trial court should have granted his oral
motion to suppress the methamphetamine because the stop of the vehicle was
unreasonable. The State maintains, among other assertions, that Appellant waived his
complaint for appellate review. 
Preservation of Error
Â Â Â Â Â Â Â Â Â Â During a bench trial, Officer Bermea testified that as is customary, he did a
thorough search at the jail. During that search, he found a small plastic resealable bag
(Stateâs Exhibit 8) containing residue that was possibly methamphetamine (Stateâs
Exhibit 9) in the coin pocket of Appellantâs jeans. When the State moved to introduce
the exhibits, Appellant orally moved to suppress the evidence as being illegally seized in
violation of article 38.23 of the Texas Code of Criminal Procedure. The trial court
overruled Appellantâs motion and received both exhibits. 
Â Â Â Â Â Â Â Â Â Â An employee of the Texas Department of Public Safety who tested the substance
contained in Exhibit 9 testified it contained .13 grams of methamphetamine. Appellant
objected to its admission until the chain of custody could be established. The trial court
sustained the objection. 
Â Â Â Â Â Â Â Â Â Â Officer William Lang, the property technician for the Amarillo Police Department
testified to the chain of custody of Stateâs Exhibit 9. When the prosecutor asked that
Exhibit 9 be admitted into evidence, defense counsel stated, âNow that the chain is
established, we would have no objection to 9.â By affirmatively stating he had âno
objection to 9,â Appellant waived his right to complain on appeal that the evidence was,
as a matter of law, illegally obtained. See Holmes v. State, 248 S.W.3d 194, 196
(Tex.Crim.App. 2008) (when a defendant affirmatively states he has âno objectionâ to
the admission of the evidence during trial, he waives the right to complain on appeal
despite the trial courtâs ruling on the motion to suppress). See also Strauss v. State,
121 S.W.3d 486, 490 (Tex.Crim.App. 2003, pet. refâd). Having failed to preserve error,
Appellantâs sole issue is overruled.
Â 
Conclusion
Â Â Â Â Â Â Â Â Â Â Accordingly, the trial courtâs judgment is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â Â 
Â 

Do not publish.



e and even attributed their mother's conduct to that
fact. When asked about the children's ability to comprehend their mother's problems, their
guardian ad litem stated that "they were just like sponges" and that "they soaked it all in." 
Doctor Wilbanks, a counselor and family therapist, testified that when Allen would fail to
show up for visits, the children expressed disappointment and anger and asserted that it
was probably due to their mother's drug use. The children also informed caseworkers that
Allen repeatedly instructed them not to discuss with anyone about what was going on in the
home or they would be taken away. As a consequence of Allen's conduct, both children are
exhibiting behavioral problems and show signs of severe depression, especially M.A. 
Applying the appropriate standards of review, we find the evidence to be legally and
factually sufficient so as to enable a factfinder to reasonably form a firm conviction or belief
that Allen endangered the physical and emotional well-being of her children.

 We now turn our focus to whether termination of the parent-child relationship is in
the best interest of the children. See § 161.001(2). We begin with the presumption that
the best interest of a child is usually served by preserving the parent-child relationship. 
Wilson v. State, 116 S.W.3d 923, 929 (Tex.App.-Dallas 2003, no pet.). In deciding the
best interest of a child, we consider several factors including: (1) the desires of the child;
(2) the emotional and physical needs of the child now and in the future; (3) the emotional
and physical danger to the child now and in the future; (4) the parental abilities of the
individuals seeking custody; (5) the programs available to assist these individuals; (6) the
plans for the child by these individuals; (7) the stability of the home; (8) the acts or
omissions of the parent which may indicate that the existing parent-child relationship is not
a proper one; and (9) any excuse for the acts or omissions of the parent. Holley, 544
S.W.2d at 371-72. These factors are not exhaustive; some listed factors may be
inapplicable to some cases, while other factors not on the list may also be considered when
appropriate. In re C.H., 89 S.W.3d at 27. Furthermore, undisputed evidence of one factor
may be sufficient in a particular case to support a finding that termination is in the best
interest of the child. Id. On the other hand, the presence of scant evidence relevant to
each Holley factor will not support such a finding. Id. Evidence that proves one or more
statutory grounds for termination may also constitute evidence illustrating that termination
is in the child's best interest. See id. at 28. In any case, there must be evidence from
which a factfinder could reasonably have formed a firm conviction or belief that the child's
best interest warranted termination. In re D.S.A., 113 S.W.3d 567, 574 (Tex.App.--Amarillo
2003, no pet.). 

 It is undisputed that the Allen children have feelings toward their mother, and at least
one of the children, B.A., has expressed some desire to return to her mother. Nonetheless,
Dr. Wilbanks testified that both children seek a stable environment and become angered
at their mother's drug usage. The evidence shows that Allen has repeatedly struggled to
overcome her addiction to methamphetamine, only to relapse due to a lack of commitment
and irresponsible behavior. The record also makes clear that Allen was aware of the
possibility of recovery and was informed that drug usage would impair her ability to get her
children back. She was offered assistance in this regard from the State, as well as from
family and friends who knew of her struggles. Despite this, Allen continuously failed to
make choices in the best interest of her children. Despite the fact that Allen now admits
she needs help and has "taken steps to get herself admitted," the evidence does not
suggest a willingness to commit to raising her children in a safe and suitable environment. 

 Furthermore, Dr. Hoke, a clinical psychologist, expressed concern as to whether
Allen would ever be able to lead a stable lifestyle and be an appropriate parent. Allen
argues that one or both of the children may not be adoptable and that "leaving them in that
kind of limbo is no permanency." Although a lack of evidence about plans for permanent
placement and adoption is relevant to best interest, it cannot be the dispositive factor. In
re C.H., 89 S.W.3d at 28. Doctor Wilbanks testified to the children's multitude of behavioral
problems and, based on her interaction with the family, she feels that termination of Allen's
parental rights would be in the best interest of both children, as they need resolution and
a permanent home.

 Although Allen maintains that her conduct and surroundings never jeopardized the
emotional well-being of her children, the bulk of the evidence suggests that these children,
being of such an impressionable age, will continue to develop further emotional and
behavioral problems if returned to a culture of drug abuse and apathy. We agree with
Allen's contention that just because a parent is not the very best parent does not mean that
the parent's behavior rises to the level of termination. Unfortunately, Allen's indifference
towards the emotional and physical welfare of her children rises above that of simply bad
parenting. Having carefully reviewed the record, we conclude that there is legally and
factually sufficient evidence to support the trial court's finding that termination of Allen's
parental rights under section 161.001(2) is in the best interest of the children. Allen's sole
issue is overruled.

 Accordingly, the trial court's order of termination is affirmed.

 Don H. Reavis

 Justice

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. It is unclear as to whether anyone other than Allen and her children resided in the
home. There is some evidence in the record which suggests that Perrin and another man,
Bobby Stephens, occupied the home for various periods of time.
3. Allen testified that she was initially charged with tampering with government records
after she signed her sister's name on a traffic ticket. On February 6, 2004, she pled guilty
to a reduced charge of misdemeanor forgery and began serving her probation. 
4. The children informed caseworker Struck that Perrin also threatened Allen with a
"torch with fire," leading them to believe that their mother would be tortured. 
5. Findings of fact and conclusions of law were not requested by either party.