

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00187-CR

———————————————————

STEVEN ADAM MOORE A/K/A STEVEN MOORE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR14357

---

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Appellant Steven Moore was a passenger in a car that was stopped for a traffic violation. After police found drugs in the car, Moore (along with the driver and another passenger) was arrested. Moore moved to suppress the drugs found in the car. The trial court overruled his motion to suppress, and Moore pleaded guilty to possession of a controlled substance. A jury determined his punishment and assessed a sentence of twelve years in prison. The trial court sentenced Moore in accordance with the jury's recommendation.

On appeal, Moore challenges the trial court's suppression decision and claims that his defense counsel was ineffective for failing to object to one of the prosecutor's alleged statements during closing argument. We affirm.

## I. Background

Mikevin Singletary was a patrol officer with the Granbury Police Department in 2018. Late in the afternoon on August 16, he saw a white Acura that lacked a current registration, and he was unable to confirm through the Department of Public Safety database that the car was insured. Officer Singletary turned on his overhead lights to stop the car.

The Acura continued driving to the point where Officer Singletary felt he needed to activate his siren. Even then, the car passed a few places that the officer thought were safe enough for the car to stop. While he continued following the Acura, Officer Singletary could see the front-seat passenger making untypical movements inside the

2

car. That passenger turned out to be Moore. Combined with the driver's hesitancy to stop, Officer Singletary believed that Moore was trying to conceal some type of contraband.

After the car stopped, Officer Singletary approached it and introduced himself. But as soon as he did so, the driver introduced himself and started "rambling on," which Officer Singletary characterized as the "strangest . . . contact" that he had ever seen. In the officer's opinion, the driver's behavior indicated extreme nervousness. The driver, Brandon Guice, was especially interested in explaining that he had a flyer from a car dealership promising him $1,000. Moore was in the front passenger seat, and a man named Lee was seated in the back.

Officer Singletary asked both Guice and Moore about their criminal histories. Neither mentioned having been recently arrested for possession of a controlled substance, but a search of their criminal history showed otherwise. Guice had been arrested eleven times, which included drug arrests in 2010, 2014, and 2017. Moore had been arrested for possession of a controlled substance in 2013 and 2018. Officer Singletary knew from past experience that Lee was a drug user. In the officer's opinion, a person who conceals his past involvement with drugs is trying to distance himself from drugs in general and, in turn, trying to distance himself from any drugs in the car. These factors combined to constitute enough reasonable suspicion to believe that there were drugs in the Acura. Guice refused Officer Singletary's request for consent to search the car.

Officer Singletary called Officer Branum, Granbury's canine officer, who was at home along with his drug dog. Officer Singletary explained to Officer Branum that he had stopped a car for traffic violations and that the driver was nervous. Officer Branum, as it happened, knew Guice "from previous narcotics dealings." Officer Branum changed clothes, loaded the dog in his car, and drove to the location of the traffic stop. Due to heavy traffic, it took him over twenty minutes to arrive at the place where Officer Singletary had detained the car. Officer Branum did not activate his emergency lights.

Officer Branum arrived at the scene, took the dog out of his car, and set her to work. Prior to that day, Officer Branum had worked with his dog in both training and real-life situations hundreds of times. The dog began her free-air sniff around the car and alerted to the presence of drugs in Guice's car. The three men were arrested for drug possession.

Moore was charged with possessing 4 grams or more (but less than 200 grams) of methamphetamine, enhanced with a prior felony. Before trial, Moore filed a motion to suppress evidence of the drugs found in Guice's car. The then-sitting district judge heard Moore's motion and denied it. After a new judge took the bench, he held a new hearing on the matter at Moore's request. The new judge also denied the motion.

Moore pleaded guilty without a plea bargain. A jury heard punishment evidence and assessed a sentence of twelve years in prison. The trial court sentenced Moore accordingly.

## II.  Motion to Suppress

In his lone issue, labeled a "point of error," Moore argues that the trial court erred by denying his motion to suppress because Officer Singletary lacked reasonable suspicion to continue detaining him for a canine sniff.

### A.  Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007), we defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, *Martinez*, 570 S.W.3d at 281.

### B.  Applicable law

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. A defendant seeking to suppress evidence on Fourth Amendment grounds bears the initial burden to produce some evidence that the government conducted a warrantless search or seizure that he has standing to contest. *Rawlings v. Kentucky*, 448 U.S. 98, 104–05, 100 S. Ct. 2556, 2561 (1980); *State v. Martinez*, 569 S.W.3d 621, 623 (Tex. Crim. App. 2019). Once the defendant does so, the burden shifts to the State to prove either that the

5

search or seizure was conducted pursuant to a warrant or, if warrantless, was otherwise reasonable. *Martinez*, 569 S.W.3d at 623.

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Johnson v. State*, 622 S.W.3d 378, 384 (Tex. Crim. App. 2021). An officer conducts a lawful temporary detention when he reasonably suspects that an individual is violating the law. *See Johnson*, 622 S.W.3d at 384. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id.* This is an objective standard that disregards the detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the stop. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017).

## C. Analysis

Moore argues that the State failed to demonstrate that Officer Singletary possessed reasonable suspicion to continue to detain Moore "long after a citation could have been issued." The State replies that the facts at the scene, viewed in their totality, amounted to ample reasonable suspicion. We agree with the State.

When Officer Singletary tried to stop the car, Guice did not immediately pull over. While Guice kept driving, the officer saw that the front-seat passenger (Moore)

6

was "making movements inside the car that—that weren't typical for a passenger inside of a vehicle to do." Officer Singletary explained that the driver's "hesitancy to stop" combined with the passenger's movements indicated that "things [were] being hidden or more well concealed inside the vehicle, like, hey, this is our last chance, like let's try to hide this real quick." In other words, it would be reasonable to conclude that Guice's purpose in not immediately pulling over was to enable Moore to hide something. *See Motley v. State*, No. 05-01-00721-CR, 2002 WL 1981362, at *4 (Tex. App.—Dallas Aug. 29, 2002, pet. ref'd, untimely filed) (not designated for publication) (holding that because car continued driving after patrol car activated lights and because driver made furtive movements, officer was justified in belief that driver was trying to conceal contraband inside the car).

Reasonable suspicion further developed when Officer Singletary began to question the car's occupants. First, he testified that Guice displayed "[e]xtreme nervousness." *See Haas v. State*, 172 S.W.3d 42, 54 (Tex. App.—Waco 2005, pet. ref'd) ("Increasing or extreme nervousness and conflicting or implausible information can, along with other factors, raise a reasonable suspicion."). Although not attributable to Moore, Guice's nervousness could have led Singletary to reasonably suspect that some criminal activity was occurring in the car. Second, Officer Singletary asked them if they had been in any kind of trouble previously. Guice told him that he had been charged with prescription fraud. Moore told Officer Singletary that he had an aggravated robbery charge in 1996 in addition to some other non-serious incidents. When

7

Singletary ran their criminal histories, however, he discovered several controlled-substance arrests. Guice had been arrested eleven times and Moore twice—in 2013 and 2018. In Officer Singletary's experience, those who try to hide their drug-arrest histories are "trying to distance themselves from drugs and then, in turn, that means distancing themselves from drugs maybe in the vehicle." Officer Singletary could have reasonably detained Moore for further investigation based on his omissions when asked about his criminal history. *See Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012) ("Deception regarding one's own criminal record has also been recognized as a factor that can contribute to reasonable suspicion.").

Moore also argues that his detention was unlawful because it lasted nearly an hour. The length of Moore's detention while Officer Singletary waited for the drug dog is not per se unreasonable. *See Strauss v. State*, 121 S.W.3d 486, 492 (Tex. App.—Amarillo 2003, pet. ref'd) (holding that a seventy-five-minute detention from the traffic stop until the arrival of canine unit was not unreasonable); *Josey v. State*, 981 S.W.2d 831, 840–41 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding that a ninety-minute detention from the time of the stop until the officers searched the vehicle was not unreasonable). The evidence showed that Officer Singletary "diligently pursued a means of investigation that was likely to confirm or dispel [his] suspicions quickly"—calling for a canine unit as soon as Guice refused consent to search the car. *United States v. Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568, 1575 (1985); *see Backer v. State*, No. 14-18-00603-CR, 2019 WL 3788722, at *4 (Tex. App.—Houston [14th Dist.] Aug. 13, 2019,

no pet.) (mem. op., not designated for publication) (holding that detention was not unreasonably prolonged when officer "requested the [canine] unit as soon as appellant withdrew her consent to search"). It took Officer Branum about fifteen to twenty minutes to change clothes and load the dog into his car. He testified that he arrived at the scene as fast as he reasonably could, though he was hampered by rush-hour traffic. Under the circumstances, we conclude that neither Officer Singletary nor Officer Branum unduly prolonged Moore's detention. *See McAnally v. State*, No. 2-08-342-CR, 2009 WL 3956749, at *4 (Tex. App.—Fort Worth Nov. 19, 2009, pet. ref'd) (mem. op., not designated for publication) (holding seventy-minute continued detention of suspect was reasonable when officer had to call more than one canine unit to find someone who could come to the scene).

We overrule Moore's point of error.

### III.  Moore's Ineffective-Assistance Argument

In a section of his brief entitled "Other Argument and Authorities,"[1] Moore accuses his trial attorney of ineffective assistance for failing to object to a portion of the State's argument, "which introduced the issue of prayer and answered prayer [and] possibly so inflamed and influenced the jury's decision that [his] right[s] to due process and equal protection were violated."

---

[1]This section was not labeled as a separate point of error or issue.

9

We have examined the State's punishment argument and can find no references to either "prayer" or "answered prayer."[2] Moore's brief, moreover, contains no citation to the record pointing to such an argument. We hold that Moore has inadequately briefed this argument. *See* Tex. R. App. P. 38.1(i) (stating that brief must contain "appropriate citations to authorities and to the record"). To the extent that Moore's reference to ineffective assistance of counsel constitutes a separate point of error, we overrule it.

## IV. Conclusion

Having overruled both Moore's suppression arguments and his ineffective-assistance-of-counsel claim, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: September 21, 2023

---

[2]The prosecutor referred to Moore's testimony that he has found God and acknowledged that this was a "good thing." But this comment does not seem to be the focus of Moore's complaint.