

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00414-CR
_____

THE STATE OF TEXAS, APPELLANT

V.

KENNETH LOVEJOY, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 68,694-E; Honorable Douglas Woodburn, Presiding

July 29, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, the State of Texas, appeals from orders granting two motions to suppress evidence filed by Appellee, Kenneth Lovejoy. In a single issue, the State asserts the trial court abused its discretion in suppressing evidence. We affirm.

## BACKGROUND

In April 2014, an indictment was filed alleging that, on or about March 4, 2014, Appellee intentionally or knowingly possessed a firearm before the fifth anniversary of his release from parole following a felony conviction.[1] Appellee subsequently filed two motions to suppress all evidence alleging (1) "no probable cause existed to stop or detain the Defendant" and (2) the "period of detention [was] in excess of that legally justified without a warrant or probable cause."

At the hearing on the motions, Deputy Steven Orcutt testified that, on March 3, 2014, at about 11:00 p.m., he and other officers were focusing their patrols on residences in an area that was the subject of recent burglaries and narcotics activity. Specifically, he was watching a residence known to be occupied by a burglary suspect. That night, there was little traffic at the residence. Later that evening Deputy Orcutt observed a dark-colored SUV pull into the driveway of the residence. No one exited the vehicle, and in less than a minute, it backed out of the driveway and continued southbound on Broadway Street. Deputy Orcutt radioed Lieutenant Robert Laird that a vehicle had left the suspect's residence and was heading south on Broadway.

Lieutenant Laird testified that, after receiving Deputy Orcutt's radio transmission, he passed the southbound vehicle while traveling northbound on Broadway. Because the vehicle had just left a burglary suspect's residence in an area where numerous residential burglaries had occurred, he decided to investigate. By a radio call code, Lieutenant Laird notified other officers that he had the vehicle in sight. He testified that he then turned around and started to catch up with the vehicle when he observed it turn

---

[1] *See* TEX. PENAL CODE ANN. § 46.04 (West 2011). The indictment also contained two enhancement paragraphs for prior felony convictions of possession of a controlled substance and manufacture or delivery of a controlled substance.

2

into a driveway without signaling for the requisite 100 feet. When it appeared the vehicle was about to pull back onto Broadway, Lieutenant Laird turned on his overhead lights. The vehicle stopped and Appellee was later identified as the driver.

Lieutenant Laird testified that normally when he makes a traffic stop, he approaches a vehicle, identifies himself, and tells the driver why he was stopped. In this case, however, he introduced himself and struck up a conversation with Appellee. Appellee explained he was looking for a friend's house when he became lost. Lieutenant Laird described Appellee as being honest and forthcoming about his trip. He ran Appellee's driver's license and insurance card on a computer and everything checked out. Appellee did not have any outstanding warrants.

At that point, without issuing a traffic citation, Lieutenant Laird decided to extend the detention by completing a "field interview card" before he released Appellee. Although he already had "pretty much" all the information he needed to fill out the card, he "ordered" Appellee out of the vehicle.[2] He took Appellee to the back of his vehicle where he noticed a slight awkward movement by Appellee, who was standing with his legs "pretty close together." Lieutenant Laird then decided to do a pat down search for his and the other officers' safety when he discovered a .25 pistol in Appellee's groin area. At that time, he placed Appellee under arrest for possession of a firearm by a felon.[3]

---

[2] Lieutenant Laird testified Appellee did not have the option to not get out of the car.

[3] Lieutenant Laird testified that he informed Appellee of a traffic violation, i.e., failing to signal within 100 feet of making a turn, TEX. TRANSP. CODE ANN. § 545.104(b) (West 2011), after he had found the gun on him, placed him in handcuffs, and put him in the back of a patrol car. He did not issue a written citation or warning. An officer assisting Lieutenant Laird put in his report that the purpose of the Lieutenant's stop was suspicion and did not mention any traffic violation.

Following the hearing, the trial court granted Appellee's motions and issued its *Findings of Fact and Conclusions of Law* concluding, in part, as follows:

1. In the absence of a traffic violation, there was no probable cause for the stop.

2. Deputy Laird did not have reasonable suspicion to stop the Defendant's vehicle due to numerous burglaries and other crimes having been committed in the area at times other than the evening of the arrest.

3. Deputy Laird did not have reasonable suspicion to prolong the detention of Defendant in order to fill out a field interview card. Deputy Laird already had sufficient information to complete a field interview card.

4. Deputy Laird's desire to fill out a field interview card did not justify detention.

This appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion; *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000), while applying a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review, *St. George v. State,* 237 S.W.3d 720, 725 (Tex. Crim. App. 2007), *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1980), and we give almost total deference to the trial court's rulings on (1) questions of historical fact, especially when based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673. Appellate courts review *de novo* "mixed questions of law and fact" that do not depend upon credibility and demeanor. *Id.*

4

An appellate court must review the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). When the trial court makes explicit findings, as it did here, we determine whether the evidence, when viewed in a light most favorable to the trial court's ruling, supports those fact findings. *Id.* We may uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

With respect to the circumstances surrounding this case, it is well-established that a police officer may lawfully stop a vehicle and briefly detain its occupants for investigative purposes if, under the totality of the circumstances, the officer has reasonable suspicion, supported by articulable facts, that a traffic offense has occurred. *See Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). In such circumstances, in the absence of reasonable suspicion that other criminal activity is afoot, the period of detention must be no longer than is reasonably necessary to effectuate the purposes of the initial traffic stop. *Matthews v. State,* 431 S.W.3d 596, 603 (Tex. Crim. App. 2014); *Davis v. State,* 947 S.W.2d 240, 244-45 (Tex. Crim. App. 1997); *Strauss v. State*, 121 S.W.3d 486, 490 (Tex. App.—Amarillo 2003, pet. ref'd). As a part of the original traffic stop, the officer may require the detainee to identify himself, produce a driver's license, and provide proof of insurance. *Id.* at 491. So too may he ask the driver and any passengers about their destination and the purpose of their trip. *Id.* The officer may also check to see if there are any outstanding warrants for the detainees and, once the purpose of the stop has been effectuated, request voluntary consent to search the vehicle or continue the detention. *Id.* At that point, the detention may be involuntarily extended only if the officer has reasonable suspicion, again

5

sufficiently supported by articulable facts, that the detainee has been, or soon will be, engaged in criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Ford v. State,* 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

### ANALYSIS

Here, the State asserts the trial court erred in granting Appellee's motions to suppress because Lieutenant Laird had reasonable suspicion to stop Appellee for committing a traffic offense, i.e., failing to timely signal his intent to turn.[4] TEX. TRANSP. CODE ANN. § 545.104(b) (West 2011). In this case, the trial court determined that Lieutenant Laird's account of the traffic violation was not credible and gave his testimony little or no weight when it found "[i]n the absence of a traffic violation, there was no probable cause for the stop."

The State further contends the trial court erred in granting Appellee's motion to suppress because a traffic offense coupled with events subsequent to the initial stop justified the extended detention, the request to exit the vehicle, the subsequent "pat down" search, and the eventual discovery of the pistol which lead to Appellee's arrest for felon in possession of a firearm. The State contends the officer had reasonable suspicion to extend the detention, apart from the alleged traffic offense, because (1) there were burglaries in the area, (2) Appellee's vehicle had been seen at the residence of a burglary suspect, (3) he was a parolee from a different county, and (4) he professed to be en route to the residence of another known felon. Appellee contends that none of

---

[4] The State relies entirely on the commission of a traffic offense to justify the traffic stop. The State does not assert that Lieutenant Laird had a reasonable suspicion Appellee was engaged in a criminal offense due to the time of night, his presence in a high crime area, or the driveway of a burglary suspect. *See Crain v. State,* 315 S.W.3d 43, 53 (Tex. Crim. App. 2010).

6

these reasons provide reasonable suspicion that Appellee had been, or soon would be, engaged in criminal activity.

The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *Wiede*, 214 S.W.3d at 24-25 (finding the trial court is free to believe or disbelieve any or all of the evidence presented). We do not engage in our own factual review, *St. George*, 237 S.W.3d at 725, and we must review the evidence in the light most favorable to the trial court's ruling. *Wiede,* 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818-19.

Here, the trial court also found Lieutenant Laird did not have reasonable suspicion to prolong the detention in order to fill out a field interview card because he already had sufficient information. By granting Appellee's motion to suppress, the trial court implicitly found Lieutenant Laird lacked reasonable suspicion to believe Appellee had been, or soon would be, engaged in other criminal activity. The trial court further found that the extended detention was not justified. Giving appropriate deference to the trial court determinations of credibility and viewing the evidence in the light most favorable to the trial court's ruling, we find the trial court's findings are sufficiently supported by the record and are correct under an applicable theory of law. Accordingly, we find the trial court did not err in granting Appellee's motion to suppress. *See Crain v. State,* 315 S.W.3d 43, 47 n.5 (Tex. Crim. App. 2010) (holding "trial court is the exclusive fact-finder at a suppression hearing"). The State's issue is overruled.

**CONCLUSION**

Because we believe the trial court's ruling is supported by the record and correct according to an applicable theory of law, we overrule the State's sole issue and affirm the orders of the trial court.

Patrick A. Pirtle
Justice

Do not publish.