

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

## No. 07-15-00112-CR
_____

### DANIEL ORES PULVER, APPELLANT

### V.

### THE STATE OF TEXAS, APPELLEE

On Appeal from the 222nd District Court
Oldham County, Texas
Trial Court No. OCR-14I-065; Honorable Roland Saul, Presiding

November 17, 2016

## MEMORANDUM OPINION

### Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Daniel Ores Pulver, was convicted by a jury and sentenced to seventy years confinement in the Texas Department of Criminal Justice and assessed a fine of $70,000 for possession of a controlled substance, to-wit: heroin, in an amount of 400

grams or more, enhanced by a prior felony conviction.[1]  By three issues, Appellant contends the trial court erred by: (1) denying his motion to suppress, (2) allowing testimony concerning his prior criminal record to be admitted during the guilt/innocence phase of trial, and (3) ordering the payment of court-appointed attorney's fees.  We modify the judgment and affirm as modified.

BACKGROUND

On March 22, 2012, Appellant was stopped for speeding (78 miles per hour in a 75 mile-per-hour zone) while driving eastbound on Interstate 40, in Oldham County, at approximately 5:17 p.m., by Trooper Paul Weller.  When the trooper approached Appellant's vehicle, he asked Appellant for his driver's license and rental agreement.  Trooper Weller advised Appellant he was only going to issue a warning ticket but that he needed to complete the necessary paperwork before Appellant could leave.  Appellant accompanied the trooper to his vehicle and sat in the passenger seat.

According to Trooper Weller, Appellant appeared nervous, had shallow, rapid breathing, and avoided eye contact.  Initially, Appellant advised the trooper that he was headed to an Elton John concert in Chicago.  The trooper then checked online with his phone and discovered that Elton John was not playing a concert in Chicago that

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (West 2010).  An offense under this section is punishable by imprisonment for life or for a term of not more than 99 years or less than 10 years, and a fine not to exceed $100,000.  *Id.* at § 481.115(f).  Because the punishment range for this offense was an exceptional sentence governed by the provisions of the Texas Health and Safety Code, and not classified as a first degree felony, the provisions of § 12.42(c)(1) do not apply.  *See* TEX. PENAL CODE ANN. § 12.42(c)(1) (West Supp. 2016). *Cf. id.* at § 12.41 (pertaining to the classification of a conviction obtained as the result of the prosecution of an offense based upon a statute other than the Texas Penal Code). *But see Melendez v. State,* No. 08-09-00225-CR, 2010 Tex. App. LEXIS 9666, at *7 (Tex. App.—El Paso Dec. 8, 2010, pet. ref'd) (mem. op., not designated for publication) (finding the minimum punishment range for an enhanced offense under § 481.115(f) to be 15 years).

weekend. The trooper then asked Appellant if his driver's license had ever been suspended and if he had ever been arrested. Appellant told him that his license had been suspended ten years ago and he had two previous convictions. Appellant's answers heightened the trooper's suspicions because his computer did not reflect a driver's license suspension, yet it showed a significant criminal history.

A passenger in Appellant's vehicle, Brandi Lynn Grammer, confirmed Appellant's story that they were traveling to Chicago for an Elton John concert. Ms. Grammer indicated that they had stayed in California and were going to the coast. Appellant told the trooper they were coming from Idaho and had considered going to the coast, but it was too far. Trooper Weller also indicated that Appellant's vehicle had a "lived-in" look.

During his interview, the trooper asked Appellant if there was anything illegal in the vehicle. Appellant responded that there was not, whereupon the trooper asked if he could search the vehicle. Appellant responded by asking, "Why?" The trooper advised him that it was because he believed there was illegal contraband in the vehicle. At this point, Appellant had been detained approximately eleven to twelve minutes. When consent to search was not forthcoming, the trooper informed Appellant that his response would be treated as a "no," and, in accordance with Department of Public Safety policy when consent to search has been denied, a drug-detection canine unit would be summoned to do an air sniff around the vehicle. At that point, Appellant consented to the search. Notwithstanding the fact that he had consent to search the vehicle, the trooper decided to wait for the canine unit to arrive.

3

When it was discovered that no canine unit was available from Oldham County or Deaf Smith County, a canine unit was requested from Randall County. A canine from the Randall County Sheriff's Office arrived around 6:10 p.m., approximately fifty-three minutes after the initial detention had begun (or approximately forty to forty-one minutes after Trooper Weller decided to detain Appellant following his refusal to consent to a search).

Once the canine unit arrived, Trooper Weller observed the dog "alert" on the vehicle. An interior search of the vehicle lasting approximately fifteen minutes was then conducted, yielding four bundles of heroin, weighing 2.67 kilograms or 5.85 pounds (including adulterants and dilutants), in the rear panel door of the passenger side of the vehicle. Appellant and Ms. Grammer were placed under arrest.

ISSUE ONE—MOTION TO SUPPRESS (PROLONGED DETENTION)

An appellate court reviews a trial court's ruling on a motion to suppress evidence under an abuse of discretion standard. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). In a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross,* 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000). In its review of the trial court's decisions, an appellate court must afford almost total deference to the trial court's determination of historical facts. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). However, detention and reasonable suspicion are by their very nature legal concepts properly subject to *de novo* review. *Hunter v. State,* 955 S.W.2d 102, 107 (Tex. Crim. App. 1997); *Sanders v. State,* 992 S.W.2d 742, 744 (Tex. App.—Amarillo 1999, pet. ref'd).

4

Accordingly, when analyzing the propriety of a search and seizure under the Fourth Amendment to the United States Constitution, we give appropriate deference to the trial court's determination of historical facts, but we review the decision of the trial court *de novo* concerning whether those facts amount to reasonable suspicion justifying an investigatory detention when viewed from the standpoint of a similarly situated, objectively reasonable police officer. *Ornelas v. United States,* 517 U.S. 690, 697-99, 116 S. Ct. 1657, 1661-62, 134 L. Ed. 2d 911 (1996); *Guzman,* 955 S.W.2d at 89.

An investigatory detention is reasonable, and therefore constitutional, if (1) the officer's action was justified at the detention's inception and (2) the detention reasonably relates in scope to the circumstances that justified the interference in the first place. *Terry v. Ohio,* 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968). Under the first prong of *Terry,* the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21. The officer must have a "reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to crime." *Davis v. State,* 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (citing *Meeks v. State,* 653 S.W.2d 6, 12 (Tex. Crim. App. 1983)). "The second prong of *Terry* deals with the scope of the detention. . . . [A]n investigative detention, 'like any other search, must be strictly circumscribed by the exigencies which justify its initiation.'" *Id.* at 243 (quoting *Terry,* 392 U.S. at 25-26). Facts giving rise to reasonable suspicion may be supplied by information from another person. *Brother v. State,* 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).

Accordingly, it is well-established that a police officer may lawfully stop a vehicle and briefly detain its occupants for investigative purposes if, under the totality of the circumstances, the officer has reasonable suspicion, supported by articulable facts, that a traffic offense has occurred. *See Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). In such circumstances, in the absence of reasonable suspicion that other criminal activity is afoot, the period of detention must be no longer than is reasonably necessary to effectuate the purposes of the initial traffic stop. *See Rodriguez v. United States*, 575 U.S. ___, 135 S. Ct. 1609, 1612, 191 L. Ed. 2d 492 (2015) (holding that extension of traffic stop in order to conduct canine drug-detection sniff violates Fourth Amendment shield against unreasonable seizures); *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014); *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004); *Davis*, 947 S.W.2d at 244-45; *Strauss v. State*, 121 S.W.3d 486, 490 (Tex. App.—Amarillo 2003, pet. ref'd).

As a part of the original traffic stop, the officer may require the detainee to identify himself, produce a driver's license, and provide proof of insurance. *Strauss*, 121 S.W.3d at 491. So too may he ask the driver and any passengers about their destination and the purpose of their trip. *Id.* The officer may also check to see if there are any outstanding warrants for the detainees and, once the purpose of the stop has been effectuated, request voluntary consent to search the vehicle or continue the detention. *Id.* At that point, the detention must end and the driver be permitted to leave unless the officer has reasonable suspicion, again sufficiently supported by articulable facts, that the detainee has been, or soon will be, engaged in criminal activity other than the initial traffic offense. *See Terry*, 392 U.S. at 21-22; *Ford v. State*, 158 S.W.3d 488,

6

492 (Tex. Crim. App. 2005). In other words, once the reason for the traffic stop is resolved, the stop may not then be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Ohio v. Robinette,* 519 U.S. 33, 41, 117 S. Ct. 417, 422, 136 L. Ed. 2d 347 (1996) (Ginsburg, J., concurring)). Rather, reasonable suspicion that another offense has been or is being committed is required to prolong the detention. *Lambeth v. State,* 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd); *McQuarters v. State,* 58 S.W.3d 250, 256 (Tex. App.—Fort Worth 2001, pet. ref'd). The officer must be able to point to specific articulable facts which, based on his experience and personal knowledge coupled with logical inferences drawn from those facts, warrant the additional intrusion. *Davis,* 947 S.W.2d at 244. In making the decision to prolong the detention, an officer is entitled to rely on all the information obtained during his initial contact with the persons being detained. *Razo v. State,* 577 S.W.2d 709, 711 (Tex. Crim. App. 1979); *Powell v. State,* 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd).

Here, the trial court found that the totality of the circumstances, viewed from the perspective of an objectively reasonable and similarly situated police officer, amounted to reasonable suspicion justifying the prolonged investigatory detention and we must review that decision *de novo*, giving appropriate deference to the trial court's determination of historical facts. *Guzman,* 955 S.W.2d at 89. In that regard, Appellant argues that a prolonged detention was not reasonable because (1) he was cooperative during the traffic stop, (2) he provided a valid driver's license and car rental agreement when asked, (3) he answered the trooper's questions concerning the details and purpose of his trip, (4) his statements to the trooper were confirmed by a passenger in

the vehicle, (5) the trooper did not see or smell anything that would raise a reasonable suspicion of criminal activity, (6) the trooper did not see or observe anything that would indicate past, present, or future criminal activity, and (7) there were no outstanding warrants.  On the other hand, the State contends the trial court correctly determined that the trooper had reasonable suspicion to suspect additional criminal activity was afoot because (1) Appellant was "extremely nervous," (2) he exhibited "real heavy, shallow breathing," (3) he avoided eye contact, (4) he hesitated in answering the trooper's questions, (5) he indicated that the purpose of his travels was to see an Elton John concert in Chicago, when the trooper had confirmed via the Internet that no such concert was scheduled, (6) he provided incomplete information regarding his past criminal record, and (7) he provided what the trooper perceived to be a suspicious answer regarding his plan to drive to the Pacific Coast during his trip.  The State further implies that Appellant's refusal to consent to a search of his vehicle supports a finding of reasonable suspicion sufficient to extend the investigative detention long enough to request and receive the assistance of a drug-detection canine.

There is no doubt that Trooper Weller had reasonable suspicion to detain Appellant once the drug-detection canine alerted to the contraband.  The question is, when consent was given but not relied upon by the trooper to justify the search, did he have reasonable suspicion to prolong the detention approximately forty-one minutes while he waited for the drug-detection canine to arrive?  In announcing its ruling, the trial judge stated that he was denying the motion to suppress based on "the totality of the circumstances and the fact that the Defendant did give consent to search after he first refused."

8

Where, as here, it is clear that the trooper did not justify the prolonged detention, or the ultimate discovery of the contraband on Appellant's consent to search, the trial court should not have based its decision to deny the motion to suppress, in whole or in part, on that consent or the earlier refusal. That being said, we find any error in doing so to be harmless[2] because under the totality of the other circumstances, when viewed from the perspective of an objectively reasonable and similarly situated police officer, Trooper Weller had sufficient reasonable suspicion to justify the prolonged investigatory detention. In particular, in addition to the factors mentioned by the State, we attach significance to the fact that the criminal history omitted by Appellant was his two prior drug possession convictions. *See Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012) (deception regarding one's criminal record recognized as a factor that can contribute to reasonable suspicion). Issue one is overruled.

ISSUE TWO—RULE 403 OBJECTION

By his second issue, Appellant contends the trial court erred by overruling defense counsel's Rule 403 objection pertaining to testimony given during the guilt/innocence phase of the trial concerning Appellant's prior criminal record. Specifically, Appellant contends the trial court abused its discretion by failing to conduct

---

[2] Generally, the erroneous consideration of evidence is non-constitutional error subject to harmless error analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Non-constitutional error does not require reversal unless it affects the appellant's substantial rights. An appellant's substantial rights are not affected by the erroneous consideration of evidence if, after examining the record as a whole, the appellate court has a fair assurance that the error did not influence the fact finder, or had but a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (disregarding the erroneous admission of evidence where evidence did not have a substantial or injurious influence on the fact finder's decision).

a proper legal analysis when it did not balance the probative value of the evidence against the danger of unfair prejudice.

Whether evidence is admissible under Rule 403 of the Texas Rules of Evidence is a decision within the sound discretion of the trial court. *Montgomery v. State,* 810 S.W.2d 372, 389 (Tex. Crim. App. 1991). Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389. A trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Casey v. State,* 215 S.W.3d 870, 879-880 (Tex. Crim. App. 2007).

Pertinent to this issue, the record reflects the following dialog:

[Trooper]: When I ran the criminal history, he informed me that he had been arrested for, I believe, a DUI and an assault or a battery, but there was some other drug arrests that – that he did not mention.

[Defense Counsel]:  Objection, Your Honor.  It's prejudicial, Your Honor.  It has no materiality as to the charge today, Your Honor.

[Court]:  Well, that's overruled.  I think he has explained that.

Assuming defense counsel's objection even called for a Rule 403 balancing analysis by the trial court, it is presumed the trial court balanced the probative value of the evidence against its prejudicial effect when it overruled that objection.  *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).   It is not necessary that the trial court perform the balancing test on the record.  *Id.*  Given the brief and attenuated nature of the complained-of evidence, the unlikelihood of confusion of the issues, and the contextual necessity of explaining the trooper's reasons for suspicion, even if we were to assume the trial court erred in failing to conduct such an analysis, any error would be harmless.  *See* TEX. R. APP. P. 44.2(b).

ISSUE THREE—ATTORNEY'S FEES

By his third issue, Appellant contends the trial court erred by including a hand-written notation on the *Judgment* and *Order to Withdraw Funds* (attached to the judgment as "Exhibit A") ordering him to reimburse the State for court-appointed attorney's fees in the sum of $2,397.00.  The State candidly admits that the order to pay attorney's fees should be deleted.  *See Mayer v. State*, 309 S.W.3d 552, 556-57 (Tex. Crim. App. 2010).  Accordingly, we modify the trial court's *Judgment* and *Order to Withdraw Funds* by deleting the hand-written notation "+ $2,397 $^{00}$."  We further order that a *Judgment Nunc Pro Tunc* and an amended *Order to Withdraw Funds* be prepared, executed, and delivered to the Texas Department of Criminal Justice.

11

CONCLUSION

The judgment of the trial court is modified in accordance with this opinion and is affirmed as modified.

Patrick A. Pirtle
Justice

Do not publish.