

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00179-CR
_____

BRUCE ALLEN HENRY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 413th District Court
Johnson County, Texas
Trial Court No. DC-F20100073 Counts 1-4,
Honorable William C. Bosworth, Jr., Presiding

November 27, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Bruce Allen Henry, appellant, appeals his four convictions for possessing controlled substances. His issues involve the search of his vehicle, whether it was legitimate, and whether the trial court should have submitted an instruction under article 38.23(a) of the Texas Code of Criminal Procedure. We affirm.[1]

---

[1] Because this appeal was transferred from the Tenth Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

*Issue One – Article 38.23 Instruction*

Appellant initially contends that he "filed a proposed jury charge requesting that the jury litigate the existence of the consent to search his vehicle." He believed himself entitled to the instruction because "[t]he State introduced an audio and video recording from the patrol car which raised a question of fact as to whether [appellant] consented to the search." Since the "consent was the only justification for the search and seizure in this case" and the lack of consent his defense, the "omission of this required charge prevented [him] from having his only defensive issue considered by the jury that convicted him." We overrule the issue.

Per article 38.23 of the Code of Criminal Procedure, "[n]o evidence obtained by an officer . . . in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2018). If "the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." *Id.* The right to an instruction under article 38.23(a) is limited to situations wherein there exists a disputed issue of fact that is material to a purported violation of a constitutional or statutory provision that would render the evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007); *Shaw v. State*, No. 07-16-00284-CR, 2018 Tex. App. LEXIS 3629, at *3-4 (Tex. App.—Amarillo May 22, 2018, pet. ref'd) (mem. op., not designated for publication). Moreover, there are three prerequisites that must be shown to trigger the application of article 38.23(a). They are: 1) the evidence heard by the jury must raise an issue of fact;

2

2) it must be affirmatively contested; and 3) the contested fact issue must be material to the lawfulness of the conduct through which the evidence was obtained. *Id.* at *3.

To reiterate, appellant asserts that the only basis justifying the discovery of the drugs he possessed concerned his consent to search the vehicle purportedly given the officer. Whether he gave such consent was a material issue of fact, in his view. It was such an issue because the "entire video contradicts the existence of any consent to search." Not only did the audio portion of the video allegedly fail to capture his assent to the search but also showed him to be eager to leave, shaking his head, and arguing with the officer. For the reasons we will explain, these circumstances did not obligate the trial court to submit the requested instruction.

The detaining officer testified that: 1) he had asked appellant if he had contraband in the truck; 2) appellant replied in the negative; 3) he (the officer) asked if appellant had "a problem with me just double checking"; 4) appellant's response was that he did not; 5) he (the officer) reaffirmed appellant's answer by asking "good to go?"; and 6) appellant replied "yes." Aspects of this testimony were captured on the video of the stop taken from a camera in the patrol unit. The officer's questions can be readily discerned from the recording, but the same is not true of appellant's responses.

Appellant's visage cannot be seen in the video. Instead, the video portrays only a blurred partial silhouette of someone sitting in the driver's seat, until appellant actually exits the car after purportedly acquiescing to the search. Similarly, appellant's words while sitting in the truck are little more than muted, inaudible murmurings, or so the trial court could have reasonably concluded upon playing the video. In short, whether appellant actually responded affirmatively or negatively to the officer's inquiries about

3

whether appellant would consent to a search of the vehicle cannot be discerned from the electronic recording.

Next, after exiting the pickup, appellant's words can be heard somewhat clearer. Yet, he still spoke at a lower volume than the officer. And, in so speaking, he said something about being "really late" and wanting to get tires; however, those words were not coupled with any reference to having authorized a search. They came after the officer told appellant that he (the officer) just wanted to "make sure [appellant] had nothing in [his] vehicle" and needed to wait for another officer to arrive. Those words resulted in appellant shaking his head, which gesture caused the officer to ask why he was shaking his head. At that point, appellant mentioned being late and needing tires. But at no time can appellant be heard uttering words expressly aimed at the upcoming search and his prior authorization to the officer to conduct it.

As previously mentioned, a fact issue arises when one factual proposition is affirmatively contested by another bit of evidence. *Shaw*, 2018 Tex. App. LEXIS 3629, at *3. For instance, when a defendant suggests that a video contained evidence creating a fact issue, the video must show "that appellant affirmatively did not do something that [the officer] said that he did do." *Madden*, 242 S.W.3d at 516 (stating that "[o]nly if the video clearly showed that appellant affirmatively did not do something that Trooper Lily said that he did do, and the video clearly would have shown that conduct if it had occurred, would there be some affirmative evidence of a disputed historical fact"); *Thomas v. State*, No. 10-11-00250-CR, 2013 Tex. App. LEXIS 6943, at *16-17 (Tex. App.—Waco June 6, 2013, no pet.) (mem. op., not designated for publication) (stating the same). The video at bar did not and does not clearly and affirmatively show that appellant refused consent to the search or withdrew his consent once given. The purpose of appellant shaking his head

4

and professing to being late and needing tires after having agreed to a search of the car is the subject of mere speculation. Maybe it was in reference to the search; maybe it was in reference to having to wait until another officer arrives before the search would begin and the delay that would cause. Speculation, however, does not equal evidence affirmatively contesting the officer's testimony regarding the existence of consent. *See Thomas*, 2013 Tex. App. LEXIS 6943, at *16-17 (holding that an article 38.23(a) instruction was unnecessary since the "in-car video recording is not conclusive and does not contradict the officers' testimony" about Thomas failing to properly signal his intent to turn). Appellant had opportunity to expressly object to the search if he cared to when the officer asked why he shook his head. Despite that opportunity, appellant said nothing about the search itself or his permission to conduct it. Consequently, the video did not create the issue of material fact needed to trigger the trial court's duty to charge the jury per article 38.23(a). *Id.*

*Issue Two – Motion to Suppress*

Appellant next complains of the trial court's denial of his motion to suppress the statements uttered by appellant and the contraband found as a result of the vehicle search. He does this by first questioning whether his consent to search the vehicle was voluntarily given. Then, he argues that the stop was unduly extended to garner basis for a search. We overrule the issue.[2]

---

[2] Much of appellant's discussion under this topic relates to the question of preservation. Apparently, he said "no objection" multiple times when the State tendered into evidence at trial the contraband acquired during the search. A trial court's denial of a motion to suppress normally preserves for review a complaint about whether the evidence at issue was lawfully acquired. *Kershaw v. State*, No. 07-17-00282-CR, 2018 Tex. App. LEXIS 5819, at *2-3 (Tex. App.—Amarillo July 26, 2018, no pet.) (mem. op., not designated for publication). Yet, uttering the words "no objection" at trial still may result in a waiver of the complaint. *Id.* Whether it does depends on if the record as a whole demonstrates that the appellant did not intend to waive the matter when uttering the words and the trial court did not construe the words to be a waiver. *Id.* We reviewed the record and conclude that appellant did not intend to forgo his complaint about the search. Nor can we say that the trial court construed the words as intent to waive. Thus, the issue was preserved.

According to the record, the officer first spotted appellant's truck in response to a 9-1-1 call. The truck was seen at a house by a neighbor. That neighbor knew who normally resided there and did not recognize appellant as one of those occupants when he exited the abode with items in hand.

The officer not only came upon the truck as appellant drove it but also witnessed appellant fail to signal a left turn at an intersection. The latter being a violation of law, *see* TEX. TRANSP. CODE ANN. § 545.104(b) (West 2011) (stating that "[a]n operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn"), the officer was permitted to temporarily detain appellant. *See Strauss v. State*, 121 S.W.3d 486, 490 (Tex. App.—Amarillo 2003, no pet.) (stating that an officer who witnessed a traffic violation has sufficient authority to stop the vehicle). He did so and asked for appellant's driver's license and insurance upon walking up to the driver's side window of the stopped vehicle. That resulted in the officer asking several questions of appellant regarding the home which appellant had just left and who lived there. Appellant disclosed that he lived there apparently with his girlfriend and her father and had done so for about a week. During this exchange, the officer told appellant of the purpose of the stop, that being the traffic violation. So too do did he ask if appellant was carrying contraband such as drugs or stolen property. When appellant denied possessing contraband, the officer solicited the aforementioned consent to search for stolen items.

No harsh or threatening words were imparted by the officer during the verbal exchange. His handgun remained holstered. His posture (as depicted in the video) could reasonably be interpreted as neither threatening nor aggressive, while the tone of his voice remained businesslike. Nor was the officer discourteous to appellant before

6

securing consent to search or while escorting appellant from the truck to the front of the police vehicle. Admittedly, appellant was asked to end a call that he was apparently making on a cell phone as the two walked to the back of the truck. And though the officer conducted a pat-down search of appellant during the short journey to the front of the police unit, the officer explained why he opted to do so and asked if his explanation made sense. Finally, the time transpiring between the point at which appellant pulled into a parking lot in response to the officer's emergency lights and appellant consenting to a search of his vehicle was seconds shy of four minutes.

A temporary detention pursuant to a traffic stop may last no longer than necessary to effectuate the purpose of the initial stop. *Strauss*, 121 S.W.3d at 490-91; *accord Davis v. State*, 947 S.W.2d 240, 244-45 (Tex. Crim. App. 1997) (so holding). During that detention, however, the officer may conduct a brief and minimally intrusive investigation. *Strauss*, 121 S.W.3d at 490-91. So too may he ask for identification and the production of a valid driver's license and proof of insurance, check for outstanding warrants, ask about the driver's destination and purpose for the trip, direct the driver to exit the vehicle, and "most importantly, once the purpose of the stop has been effectuated and the officer's suspicions allayed, he may still ask the driver if he possesses any illegal contraband and then solicit his voluntary consent to search the vehicle." *Id.* at 491. The officer at bar receiving a call about a possible burglary, seeing the driver of the vehicle involved commit a traffic violation, stopping the vehicle, asking for a driver's license and proof of insurance, explaining to appellant the purpose of the stop, asking questions which apparently touched upon why appellant was at the house which he just left, asking appellant about the names of the homeowners, inquiring into whether appellant possessed contraband,

7

and seeking permission to search the vehicle all within four minutes of the initial stop falls within the realm of permissibility described in *Strauss.*[3]

The brevity of time involved, the officer's generally courteous and professional demeanor before soliciting consent, the officer's disclosure of the reasons underlying the stop, the lack of any formal show of force, the officer securing permission to search and reconfirming that he had such permission before appellant exited the truck, the officer's explanation of why he wanted to search, and the absence of any overt attempt by appellant to object to the search or withdraw his consent are indicia pertinent to assessing the validity of appellant's consent. *See Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012) (stating that the validity of consent is assessed by considering the totality of the circumstances and factors including whether the accused was advised of his constitutional rights, the length of the detention, the duration and repetitiveness of the questions, the accused's awareness of whether he could decline to answer questions, and the kind of psychological impact the questioning had on the accused). It may be that the officer failed to inform appellant that he did not have to answer any questions or agree to the search, as suggested by appellant. Yet, the detention was temporary and part of a traffic stop. In those situations, the detainee's freedom is not so curtailed as to require the officer to mirandize the detainee. *See Carmona v. State*, No. 07-17-00018-CR, 2018 Tex. App. LEXIS 6185, at *5-6 (Tex. App.—Amarillo Aug. 7, 2018 no pet.) (mem. op., not designated for publication) (stating that "[a]lthough a traffic stop 'significantly curtails the

---

[3]To the extent that appellant suggests the traffic violation was merely a pretext for conducting an impermissible search, we note that the pretext arrest doctrine was rejected by our Court of Criminal Appeals years ago in *Garcia v. State*, 827 S.W.2d 937 (Tex. Crim. App. 1992). That court reaffirmed its holding in *Garcia* through the more recent opinion in *Walter v. State*, 28 S.W.3d 538 (Tex. Crim. App. 2000). Because the officer witnessed an actual traffic violation occur, he had legitimate basis to stop appellant. *Id.* at 543 (reaffirming that as long as an actual violation occurs law enforcement officials are free to enforce the law and detain a person for violating it regardless of the officer's subjective motivation).

"freedom of action'" of a vehicle's driver, individuals temporarily detained pursuant to a traffic stop are not 'in custody' for *Miranda* purposes"). In asking for and receiving consent and then reverifying appellant's consent by querying if he was "good to go," the officer's conduct could be viewed as affording appellant opportunity to change his mind and think about his decision, and the record does not reflect that appellant changed his mind regarding the search despite being in a hurry.

In short, the totality of the circumstances provided the trial court clear and convincing evidence upon which to reject the notion that appellant's consent was involuntary or a mere acquiescence to a show of authority. Rather, they provided clear and convincing evidence upon which to conclude that appellant's consent was voluntary. *Montanez v. State*, 195 S.W.3d 101, 105 (Tex. Crim. App. 2006) (stating that the State must prove by clear and convincing evidence that consent was given voluntarily). Thus, we cannot say that the trial court abused its discretion in denying the motion to suppress. *See State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018) (stating that an appellate court reviews a trial court's ruling on a motion to suppress under the standard of abused discretion).

We overrule each of appellant's issues and affirm his four convictions.


Brian Quinn
Chief Justice

Do not publish.

9