**Opinion filed August 10, 2023**



## In The

# Elebenth Court of Appeals

_____

## No. 11-22-00135-CR

_____

## JOANNA ELLEN HOPKINS A/K/A JEANNA HOPKINS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR28118**

## M E M O R A N D U M   O P I N I O N

On July 9, 2020, after a traffic stop, Appellant, Joanna Ellen Hopkins a/k/a Jeanna Hopkins, was arrested, and later indicted by a grand jury, for the first-degree felony offense of possession of a controlled substance, namely methamphetamine of a weight between four and two hundred grams, with intent to deliver in a drug-free zone. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), (d), 481.134(c) (West

2017 & Supp. 2022). Appellant waived her right to a jury trial, entered a plea of not guilty to the charged offense, and proceeded to trial before the court.

At trial, Appellant orally moved to suppress any evidence that law enforcement personnel found, observed, or seized when they searched, during the traffic stop, the vehicle that she had been driving. She contended that the actions taken by law enforcement personnel violated her rights under the Fourth Amendment to the United States Constitution, Article I, Section 9 of the Texas constitution, and Article 38.23 of the Texas Code of Criminal Procedure; the trial court denied Appellant's motion. The trial court thereafter found Appellant guilty of the indicted offense, and, after Appellant pleaded "true" to the enhancement allegation in the indictment, assessed her punishment at thirty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

In her sole issue on appeal, Appellant contends that the trial court erred when it denied her motion to suppress because reasonable suspicion was lacking to justify the unreasonable duration of Appellant's detention. We affirm.

## I. *Factual Background*

On the date of Appellant's arrest, Officer Roberto Rodriguez, of the Brownwood Police Department's patrol division, was engaged in a telephone conversation with Detective Ray Slayton, of the Brownwood Police Department's narcotics division, when he observed Appellant commit a traffic violation— Appellant failed to signal her intention to turn at least one hundred feet before the turn; Officer Rodriguez also noticed that the vehicle Appellant was driving had a defective rear brake light. *See* TEX. TRANSP. CODE ANN. §§ 545.104(b), 547.323(d) (West 2022). Officer Rodriguez testified that when he described this vehicle to Detective Slayton, Detective Slayton informed him that it was consistent with the description of a vehicle that had been frequently seen at a drug house that they were investigating.

2

Officer Rodriguez initiated a traffic stop. As he approached the vehicle, he observed Appellant, the driver, reaching under the driver's seat. Officer Rodriguez testified that it is not unusual for citizens to briefly reach down to put their vehicle in park, to engage the emergency brake, or to grab a cell phone. However, Appellant was repeatedly reaching down to the point that Officer Rodriguez asked her to cease "reaching down" and to place her hands on the vehicle's steering wheel.

Officer Rodriguez testified that he immediately recognized Appellant from his prior drug investigations that involved her when he was assigned to the narcotics division. After notifying Appellant of the reasons for the traffic stop, Officer Rodriguez asked her to produce her driver's license, vehicle registration, and proof of insurance. While Appellant was searching for these items, Officer Rodriguez observed that Appellant was taking rapid, shallow breaths, her stomach seemed to be "jumping," and her hands were visibly shaking.

Appellant was unable to locate her driver's license; Officer Rodriguez then asked Appellant to exit the vehicle so that he could obtain her personal information. While dispatch was checking and verifying Appellant's information, Officer Rodriguez asked her why she appeared to be nervous. Officer Rodriguez then requested permission to search the vehicle. Appellant refused and stated: "I'd prefer that you didn't. This isn't my car."

Based on his observations—Appellant's furtive movements and nervous behavior, coupled with Officer Rodriguez's knowledge of Appellant's possible involvement in selling methamphetamine, Detective Slayton's knowledge that the vehicle Appellant had been driving was "involved" with a suspected drug house that law enforcement was investigating, and Appellant's denial of consent to search the vehicle that she had been driving—together with the suspicions that he developed, Officer Rodriguez decided to further investigate. He then called in a request for a canine unit. According to Officer Rodriguez's testimony and the dashcam video

3

from his patrol unit, no more than nine minutes had elapsed from the time that Officer Rodriguez initiated the traffic stop to the time that he requested a canine unit. While waiting for the canine unit to arrive, Officer Rodriguez issued Appellant a citation for the rear brake light violation and a warning for the turn signal violation. The canine unit arrived at the scene approximately eight minutes after Officer Rodriguez's request. The canine proceeded to conduct an open-air sniff around the vehicle. The canine alerted on the vehicle and the officers thereafter searched the vehicle. As a result of the search, the officers discovered methamphetamine, drug paraphernalia, cash, prescription pills, and marihuana in the vehicle.

## II. *Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23. We give almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We also defer to the trial court's findings as to questions of fact and mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Wade v. State*, 422 S.W.3d 661, 666–67 (Tex. Crim. App. 2013); *Derichsweiler*, 348 S.W.3d at 913.

We review de novo the trial court's determination of pure questions of law, the application of the law to established facts, and the legal significance of those facts. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Wade*, 422 S.W.3d at 667; *Derichsweiler*, 348 S.W.3d at 913; *Kothe v. State*, 152 S.W.3d 54,

62 (Tex. Crim. App. 2004) (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). We also review de novo mixed questions of law and fact that are not dependent upon credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Derichsweiler*, 348 S.W.3d at 913 (citing *Amador*, 221 S.W.3d at 673).

If the record is silent as to the reasons for the trial court's ruling, as in the case before us, we review the evidence in the light most favorable to the trial court's ruling, infer the necessary fact findings that support the trial court's ruling if the evidence supports those findings, and assume that the trial court made implicit findings to support its ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000). When considering a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). As such, the trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990). Therefore, we will sustain the trial court's ruling on a motion to suppress, regardless of whether the trial court granted or denied the motion, if it is supported by the record and if it is correct under any applicable theory of law. *Lerma*, 543 S.W.3d at 190; *Ross*, 32 S.W.3d at 855–56.

### III. *Analysis*

The Fourth Amendment to the United States Constitution guarantees protection against unreasonable searches and seizures. U.S. CONST. amend. IV; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). These constitutional protections extend to investigatory stops of persons or vehicles that fall short of a traditional arrest. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). A warrantless

traffic stop by law enforcement personnel to address traffic violations constitutes a seizure within the meaning of the Fourth Amendment and is tantamount to a temporary detention; therefore, the traffic stop must be justified and supported by reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see Derichsweiler*, 348 S.W.3d at 914 (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)).

Reasonable suspicion for a detention exists if a law enforcement officer has specific, articulable facts, in light of his experience and knowledge, combined with rational inferences from those facts, that would lead the officer to reasonably conclude that the person detained has engaged in, is presently engaging in, or soon will engage in criminal activity. *Derichsweiler*, 348 S.W.3d at 914 (citing *Sokolow*, 490 U.S. at 7); *see Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *Crain v. State*, 315 S.W.3d 43, 52–53 (Tex. Crim. App. 2010). This is an objective standard that disregards the actual subjective intent of the detaining officer and focuses, instead, on whether there was an objectively justifiable basis for the detention. *Terry*, 392 U.S. at 21–22; *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011); *Derichsweiler*, 348 S.W.3d at 914.

When we evaluate whether reasonable suspicion exists, we consider the totality of the circumstances from an objective standpoint and whether the totality of the objective information available to the detaining officer indicates that the officer had a particularized and objective basis to suspect wrongdoing. *Ramirez-Tamayo*, 537 S.W.3d at 36; *Derichsweiler*, 348 S.W.3d at 914–916 (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). This consideration includes "both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990).

We may not use a "divide and conquer" approach, in which we disregard some individual circumstances as not being suspicious; instead, we must consider the cumulative force of all the circumstances. *Furr v. State*, 499 S.W.3d 872, 880 n.8 (Tex. Crim. App. 2016) (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). As such, whether the facts known to the officer rise to the level of reasonable suspicion is a mixed question of law and fact that we review de novo. *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012).

An officer need not develop a suspicion that a particular crime has been or will be committed; rather, the officer need only *suspect* that *something* "of an apparently criminal nature is brewing." *Derichsweiler*, 348 S.W.3d at 916–17 (citing *White*, 496 U.S. at 330). In other words, it is sufficient if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *Ramirez-Tamayo*, 537 S.W.3d at 36 (quoting *Arvizu*, 534 U.S. at 273); *see Terry*, 392 U.S. at 30. This requires that the information available to the officer supports more than a mere hunch or intuition. *Ramirez-Tamayo*, 537 S.W.3d at 36; *Wade*, 422 S.W.3d at 668. The officer may then pursue multiple plausible theories in an attempt to resolve his suspicion. *United States v. Pack*, 612 F.3d 341, 355 (5th Cir. 2010) (citing *United States v. Brigham*, 382 F.3d 500, 509 (5th Cir. 2004)). Therefore, even when circumstances seem innocent in isolation, an investigative detention is justified if the circumstances combine to reasonably suggest that criminal conduct is afoot or imminent. *See Furr*, 499 S.W.3d at 880 n.8; *Murray*, 457 S.W.3d at 448; *see also Derichsweiler*, 348 S.W.3d at 917. Further, we may consider an officer's ability to "draw on his own experience and specialized training to make inferences from and deductions about the cumulative information available to him that might well elude an untrained person." *Ramirez-Tamayo*, 537 S.W.3d at 36 (citing *Arvizu*, 534 U.S. at 273).

A. *Specific, Articulable Facts of Criminal Activity*

Appellant contends that the facts expressed by Officer Rodriguez in support of his objective reasonable suspicion, are not specific articulable facts, but instead are disingenuous, conclusory, self-serving generalities that are insufficient to prove that Officer Rodriguez had the necessary reasonable suspicion to "support [the] additional detention" of Appellant.

An officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity for reasonable suspicion to exist. *Lambeth v. State*, 221 S.W.3d 831, 837 (Tex. App.—Fort Worth 2007, pet. ref'd); *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Suspicions that conduct is occurring need not be criminal in nature; however, the suspicious conduct relied upon by an officer must be sufficiently distinguishable from that of innocent people under the same circumstance to clearly, if not conclusively, set the suspect apart from them. *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997); *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991); *Lambeth*, 221 S.W.3d at 837.

Officer Rodriguez testified and articulated an abundance of facts regarding his interaction with and observations of Appellant that, taken together, sufficiently establish reasonable suspicion that a separate crime, other than the traffic violations committed by Appellant that justified the traffic stop, had occurred or was occurring. Officer Rodriguez's articulated facts, although not exhaustive, included: (1) Appellant's furtive movements upon being stopped; (2) Appellant's excessive nervous behavior; (3) his personal knowledge of Appellant's affiliation with the use and distribution of drugs; (4) information he received from Detective Slayton regarding one of his on-going investigations that implicated Appellant; and (5) Appellant's denial of consent to search the vehicle she had been driving. These articulated facts, in combination, led Officer Rodriguez to believe that Appellant had

been, was, or was about to be engaged in criminal activity, i.e., the use or the distribution of methamphetamine.

Based on the specific, articulated facts discussed above, and the relevant factors and circumstances when considered cumulatively, Officer Rodriguez, in relying on his experience as a law enforcement officer, could reasonably have suspected that other criminal activity, independent of Appellant's observed traffic violations, had occurred or was afoot. Accordingly, we hold that a sufficient and justifiable basis for reasonable suspicion existed for the officers to continue to detain and investigate Appellant for criminal activity.

B. *Alleged Unreasonable or Undue Delay or Prolonged Detention*

Appellant asserts that she was detained for an unreasonable period of time for the traffic violations and that an excessive period of time elapsed from when the purpose of the traffic stop had concluded until a canine unit arrived at the scene and alerted to the vehicle she had been driving. Whether a traffic stop was unduly delayed or prolonged by the actions of law enforcement officers is a question of reasonableness that we review de novo. *Lerma*, 543 S.W.3d at 190, 194; *Kothe*, 152 S.W.3d at 62–63; *see also Sharpe*, 470 U.S. at 682.

A person may be detained upon reasonable suspicion that the person committed a traffic violation. *Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014). Once initiated, a traffic stop (an investigative stop) may not last longer than "necessary to effectuate the purpose of the stop." *Lerma*, 543 S.W.3d at 193 (citing *Rodriguez v. United States*, 575 U.S. 348 (2015)); *see Sharpe*, 470 U.S. at 685. Therefore, after the reason for the traffic stop has been resolved, the stop may not then be used by law enforcement as a fishing expedition for unrelated criminal activity. *Davis*, 947 S.W.2d at 243 (citing *Ohio v. Robinette*, 519 U.S. 33, 41 (1996) (Ginsburg, J., concurring)).

In a traffic stop setting, in addition to determining whether to issue a traffic citation and, while the investigation is ongoing, a law enforcement officer may appropriately request and verify (1) the driver's license and proof of insurance, (2) the driver's destination and purpose of the trip, (3) whether the driver has outstanding warrants, and (4) the vehicle's ownership and registration. *Lerma*, 543 S.W.3d at 190, 193–94 (citing *Rodriguez*, 575 U.S. at 355); *Kothe*, 152 S.W.3d at 63. The officer may also inquire about matters unrelated to the purpose of the stop, so long as those inquiries do not prolong the detention beyond the time that is reasonably required to complete the purpose of the stop. *Lerma*, 543 S.W.3d at 190; *Parker v. State*, 297 S.W.3d 803, 812 (Tex. App.—Eastland 2009, pet. ref'd) (citing *Sharpe*, 470 U.S. at 686); *see also Rodriguez*, 575 U.S. at 350–51. In this regard, reasonable suspicion that another offense was or is being committed is required in order to delay or prolong the duration of the driver's initial detention. *Lambeth*, 221 S.W.3d at 836; *McQuarters v. State*, 58 S.W.3d 250, 256 (Tex. App.—Fort Worth 2001, pet. ref'd). As such, if during his investigation of the circumstances that precipitated the traffic stop the detaining officer develops reasonable suspicion that other criminal activity has occurred or is occurring, the scope of the initial investigation may expand to include the other offense and the officer may further detain the driver for a reasonable period of time in order to dispel or confirm the officer's reasonable suspicion of other criminal activity. *Lerma*, 543 S.W.3d at 191; *State v. Martinez*, 638 S.W.3d 740, 750–51 (Tex. App.—Eastland 2021, no pet.) (citing *Smith v. State*, No. 02-15-00426-CR, 2017 WL 1289354, at *4 (Tex. App.—Fort Worth Apr. 6, 2017, pet. ref'd) (mem. op., not designated for publication)).

Officer Rodriguez originally initiated a traffic stop for two traffic violations. During the traffic stop, Officer Rodriguez observed Appellant's furtive movements and nervous behavior and additionally, recognized her as someone associated with the use and distribution of drugs. Importantly, those facts existed or were

discovered, either prior to or during the traffic stop and Officer Rodriguez's initial investigation—thus, reasonable suspicion existed and had developed during the officers' initial traffic stop investigation. Here, because Officer Rodriguez developed reasonable suspicion during the course of the traffic stop investigation, the continued detention of Appellant was justified. *Lerma*, 543 S.W.3d at 191; *Martinez*, 638 S.W.3d at 751.

Once a detention is extended beyond the purpose of the initial traffic stop, a law enforcement officer must have reasonable suspicion that illegal activity, such as the presence of drugs in the vehicle that has been stopped, is imminent or afoot in order to justify the continuation of the detention. *Illinois v. Caballes*, 543 U.S. 405, 409–410 (2005); *see Lerma*, 543 S.W.3d at 193 (citing *Rodriguez*, 575 U.S. at 354). Thus, the reasonableness of the duration of Appellant's extended detention depends on whether Officer Rodriguez diligently pursued a means of investigation that was likely to quickly confirm or dispel his suspicions. *See Sharpe*, 470 U.S. at 686; *Parker*, 297 S.W.3d at 812. Therefore, a temporary detention may continue for a reasonable time period until the officer confirms or dispels his suspicion that criminal activity is afoot. *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014).

In this case, Officer Rodriguez had reasonable suspicion that *other criminal activity*, independent of the purpose of the traffic stop, was occurring, had occurred, or was imminent. Officer Rodriguez developed reasonable suspicion that Appellant could be, or could have been, engaged in the use or the distribution of methamphetamine. Because of Officer Rodriguez's suspicions, and because Appellant denied law enforcement consent to search the vehicle that she was driving, Officer Rodriguez was justified in requesting the assistance of a canine unit and extending the duration of Appellant's detention for a reasonable period of time in

11

order to dispel or confirm his reasonable suspicion of other criminal activity. *See Martinez*, 638 S.W.3d at 752.

"Generally, an open-air sniff of a vehicle's exterior by a trained canine is not a search within the meaning of the Fourth Amendment." *Martinez*, 638 S.W.3d at 752; *Johnson v. State*, 323 S.W.3d 561, 563–64 (Tex. App.—Eastland 2010, pet. ref'd); *1979 Pontiac Auto. v. State*, 988 S.W.2d 241, 243 (Tex. App.—Eastland 1998, no pet.); *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd). This is because the use of a trained canine unit is recognized as a minimally intrusive method of investigation for a law enforcement officer to either confirm or dispel his suspicions of the presence of narcotics. *Parker*, 297 S.W.3d at 812; *Strauss v. State*, 121 S.W.3d 486, 492 (Tex. App.—Amarillo 2003, pet. ref'd); *Josey v. State*, 981 S.W.2d 831, 841 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Consequently, if an officer temporarily detains "an automobile to allow an olfactory inspection by a police dog trained to detect the odor of illegal drugs," that detention "is not offensive to the Fourth Amendment when based on a reasonable suspicion that the automobile contains narcotics." *Mohmed*, 977 S.W.2d at 628. However, reasonable suspicion is required to prolong a detention so that a canine sniff can occur. *Kothe*, 152 S.W.3d at 63–64; *see Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd).

There is no rigid timeframe or bright-line rule that governs the acceptable duration of a temporary detention. *See Sharpe*, 470 U.S. at 685–86 (expressly rejecting the adoption of a "hard-and-fast" time limitation for permissible traffic stops). In fact, no requirement exists that a canine unit must arrive at the location of the traffic stop within a certain period of time; instead, it is only necessary that the timing of the canine unit's arrival is not unreasonable under the circumstances. *Martinez*, 638 S.W.3d at 752; *Strauss*, 121 S.W.3d at 492. A canine sniff that results

12

from an unreasonably prolonged traffic stop is invalid under the Fourth Amendment. *See Haas*, 172 S.W.3d at 52.

In this instance, we conclude that Officer Rodriguez diligently pursued a means of investigation that was likely to confirm or dispel his suspicions quickly. It is undisputed that Officer Rodriguez immediately requested the presence of a canine unit once it became apparent to him that a canine sniff would be necessary to dispel or confirm his suspicion that Appellant had been, was, or would be engaged in, *other criminal activity*, namely, the possession, use, or distribution of drugs in the vehicle she had been driving. The canine unit arrived at the scene of the traffic stop approximately eight minutes after Officer Rodriguez requested it. Based on these circumstances, we cannot say that an eight-minute detention to await the arrival of a canine unit is unreasonable. *See Martinez*, 638 S.W.3d at 754–55 (holding that a thirty-eight minute detention following a traffic stop until the canine unit arrived at the scene is not unreasonable); *Parker*, 297 S.W.3d at 812 (holding that a seventy-minute detention following a traffic stop until the canine alerted on the defendant's vehicle is not unreasonable per se); *Strauss*, 121 S.W.3d at 492 (holding that a seventy-five-minute detention from the time of the traffic stop until the arrival of the canine unit is not unreasonable); *Josey*, 981 S.W.2d at 840–41 (holding that a ninety-minute detention from the time of the stop until the officers searched the vehicle was not unreasonable).

Further, after its arrival at the scene, the canine alerted on the vehicle that Appellant had been driving and confirmed Officer Rodriguez's suspicions. Once the canine alerted, Officer Rodriguez's reasonable suspicion ripened into probable cause to search the vehicle. *See State v. Weaver*, 349 S.W.3d 521, 527–28 (Tex. Crim. App. 2011) (recognizing that a positive alert by a trained canine provides probable cause to search a vehicle); *Parker v. State*, 182 S.W.3d 923, 924 (Tex. Crim. App. 2006); *Martinez*, 638 S.W.3d at 754; *Branch v. State*, 335 S.W.3d 893,

901 (Tex. App.—Austin 2011, pet. ref'd); *Parker*, 297 S.W.3d at 812. As such, the duration of Appellant's further detention until the canine unit arrived at the scene was reasonable and did not violate Appellant's Fourth Amendment rights.

We conclude that the specific facts known to and articulated by Officer Rodriguez established the existence of an objectively reasonable suspicion of other criminal activity that was beyond the scope of Appellant's traffic violations, which in turn justified the extended detention of Appellant pending the arrival of the canine unit. Therefore, the trial court did not err when it denied Appellant's oral motion to suppress. Accordingly, we overrule Appellant's sole issue on appeal.

IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER
JUSTICE

August 10, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.